The **PRUDENTIAL INSURANCE COM-PANY OF AMERICA**, Plaintiff,

v.

Mary Belle **WARNER**, et al., Defendants.

**Civ. A. No. 69–C–100–R(A).**

United States District Court,
W. D. Virginia,
Abingdon Division.

July 20, 1971.

Eppa Hunton, IV, Richmond, Va., for Prudential Insurance Co. of America.

Stuart A. Barbour, Jr., Roanoke, Va., Paul Silverstein, Philadelphia, Pa., for Elizabeth Reed.

George B. Cooley, Hillsville, Va., for Mary Belle Warner.

James H. Fulghum, Jr., Roanoke, Va., for Julia Lewis and Elenia Montgomery.

WIDENER, District Judge.

This interpleader action was instituted by The Prudential Insurance Company of America under 28 U.S.C., §§ 1335 and 1397. The controversy involves proceeds paid into court from a life insurance policy issued by Prudential on the life of a serviceman, Richard Thomas Warner, which policy was issued pursuant to 38 U.S.C., subchapter III, §§ 765 et seq., entitled Servicemen's Group Life Insurance.

Private First Class Richard Thomas Warner was on active duty with the United States Marine Corps at the time of his death in April, 1969. He was unmarried and without children. He executed an application for enlistment in the Marine Corps, on a standard enlistment contract form, filled in with a typewriter, at the Recruiting Office, Bristol, Virginia, on or about June 1, 1968, and witnessed by Sergeant John Light. Decedent did not take the oath of enlistment at this time. On June 17, 1968,

this application was verified by recruiting personnel at the Recruiting Office in Beckley, West Virginia, where it was retyped on an identical form, executed by the decedent, witnessed by Lieutenant T. P. Auth, and the oath of enlistment administered. The decedent's active military duty commenced this date, i. e., June 17, 1968. This contract form contains general background information concerning the prospective recruit. It contains a space titled "Remarks." In this space on decedent's Bristol, Virginia application appears the following typewritten language:

"1st Beneficiary
Julia Lewis (sister)
P. O. Box 255
Welch, W. Va."

"2nd Beneficiary
Elenia Montgomery (sister)
Blacksburg College
Blacksburg, Va."

The above language does not appear on the enlistment contract executed in Beckley, West Virginia seventeen days later.

On the same day as his enlistment, June 17, 1968, the deceased executed a military form entitled "Record of Emergency Data." This form contains pertinent information concerning the serviceman's next of kin and provides spaces for the designation of beneficiaries for contingent gratuity pay and unpaid pay and allowances, benefits, and allotment pay if missing or unable to transmit funds. The deceased designated his two sisters, Julia Warner Lewis and Elenia Warner Montgomery, as beneficiaries of the first two such listed benefits. He designated Julia Lewis to receive his allotment pay if missing or unable to transmit funds. The only provision for life insurance on this form, including U. S. Group Life Insurance, is a space for the name and address of the company, if any, and the policy number. The word "none" is typed in this space on decedent's form.

In July, 1968, while undergoing recruit training in South Carolina, the decedent wrote a letter to his sister, Julia Lewis, stating: "I split the $10,000 insurance money between you and Kitty." Kitty is Elenia Montgomery, the sister who is a claimant here.

On August 20, 1968, the decedent executed another of the "Record of Emergency Data" forms. This time, he left Julia and Elenia as his beneficiaries for contingent gratuity pay, but removed them as beneficiaries for unpaid pay and allowances. He also removed Julia as the beneficiary to receive allotment pay if missing or unable to transmit funds. Again, in the space provided for listing insurance companies, including U. S. Group Life Insurance, appears the term "N/A."

Found in decedent's military records is another typed emergency data form, a shorter form than the previous two, which is undated and does not bear decedent's signature. This form provided for the designation of beneficiaries for Servicemen's Group Life Insurance. It also included a block which is filled in with a typewritten "X" to indicate that the serviceman did not wish to designate beneficiaries of said insurance, with a note of explanation indicating that if a beneficiary were not named, the proceeds would be paid in the following order of precedence to "spouse, children (and/or descendants of deceased children), *natural parents* in equal shares, duly appointed administrator of the estate, other blood relatives. If payment in this order of precedence is desired, place an X in the block titled 'I understand payment will be made as provided by law'." [Italics added].

Decedent's natural mother and father were divorced in 1956. The father was granted custody of the eight children born of this marriage, which included the decedent. Thereafter, he married Mary Belle Warner, decedent's stepmother. He and his second wife reared these children until the father's death in 1964. The decedent, Private First Class Warner, made his home with his stepmother after his father's death until his enlistment in the United States Marine Corps.

The distribution of proceeds from such a policy as in effect here is subject to

the provisions of 38 U.S.C. § 770, which states in pertinent part:

"§ 770. Beneficiaries: Payment of Insurance. (a) Any amount of insurance under this subchapter [Subchapter III, Servicemen's Group Life Insurance] in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim thereof, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received in the uniformed services prior to such death;

Second, if there be no such beneficiary, to the widow or widower of such member or former member;

Third, if none of the above, to the child or children of such member or former member and descendents of deceased children by representation;

Fourth, if none of the above, to the parents of such member or former member or the survivor of them;

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

Sixth, if none of the above, to other next of kin of such member or former member entitled under the laws of domicile of such member or former member at the time of his death.

\*    \*    \*    \*    \*    \*

Under 38 U.S.C. § 770(a) First, decedent's two sisters, Julia Lewis and Elenia Montgomery, claim the proceeds due to the fact that they were listed as "1st Beneficiary" and "2nd Beneficiary" respectively on decedent's application for enlistment dated June 1, 1968, and verified June 17, 1968. 1st and 2nd Beneficiaries as listed on the form is ambiguous at best. Such listing could have been for many purposes. The record is devoid of any inference that any writing, particularly including the letter to Julia of July, 1968, designating insurance beneficiaries, was received in the uniformed services prior to the death of Richard Warner. The testimony and affidavits of the Marine Corps personnel at Bristol, Virginia and Beckley, West Virginia, at the time of decedent's enlistment, offer no enlightenment as to the meaning of this designation. It must be remembered that on this same day, June 17, 1968, decedent did in fact name the two sisters as beneficiaries of other benefits, on the separate "Record of Emergency Data Form," and subsequently changed this on a similar form signed by him on August 20, 1968. Decedent also failed to sign an undated emergency data form found in his military file which, if executed, would have definitely resolved this issue.

▪▪ To support their position, the sisters further rely on the letter dated in July, 1968 and received from their brother prior to his death, where he stated that he had split the insurance money between them. What one says he has done and what he has actually done are often at odds. This letter offers no legal basis for doing what the decedent failed to do, i. e., designate a beneficiary or beneficiaries by a writing received in the uniformed service prior to his death as required by 38 U.S.C. § 770(a) First. Strict construction of this statutory provision is required. Stribling v. United States, 293 F.Supp. 1293 (E.D.Ark.1968) affirmed 419 F.2d 1350 (8th Cir. 1969).

▪ Further, in this regard, a letter for the Commandant of the Marine Corps from Captain J. A. Johnson, Head, Casualty Section, concerning the status of decedent's insurance proceeds, states that " \* \* \* whether \* \* \* Warner intended his sisters to receive his \* \* \* [SGLI], based on this notation, is a matter that cannot be ascertained on the basis of the existing Marine Corps regulations or information contained in his Marine Corps records." The letter further states that at the time of decedent's enlistment, the Marine Corps did not encourage its personnel to submit written designation of beneficiaries for their Servicemen's Group Life Insurance

if they were satisfied with the order of payment set forth in 38 U.S.C. § 770, and that, in fact, "The great majority of Marines did not submit such beneficiary designations." While the letter is not binding on the court, it should be accorded respect as the opinion of an administrative agency charged with administering the statute. Furthermore, the decedent did not become a "member" of the military service until he was sworn in on June 17, 1968. Only "members," i. e., "a person on active duty," according to the provisions of 38 U.S.C. §§ 765 and 770, may designate beneficiaries. However, the court does not base its decision on this point alone.

For the foregoing reasons, the court finds as a matter of fact and as a matter of law that Private First Class Warner did not designate beneficiaries for his Servicemen's Group Life Insurance in accordance with 38 U.S.C. § 770(a) First.

■ The decedent's natural mother, Elizabeth Reed, and his stepmother, Mary Belle Warner, both assert claims to the proceeds under 38 U.S.C. § 770(a) Fourth. Each contends that the decedent did not designate a beneficiary in accordance with the statute, with which the court agrees. They further contend that since decedent died unmarried, childless and predeceased by his father, one of them, to the exclusion of the other, should be the sole recipient of the proceeds.

The stepmother, although she did not adopt the decedent, argues that she was in fact a mother to him since the divorce of his natural parents in 1956, and that she should fall within the definition of the word "parents" as used in 38 U.S.C. § 770(a) Fourth, which states:

"Fourth, if none of the above, to the parents of such member or former member or the survivor of them;"

38 U.S.C. Chapter 19 contains the statutory provisions pertaining to different types of life insurance for servicemen. Review of this chapter discloses that the term "parent" is defined with respect to certain types of insurance but not as to others. For instance, 38 U.S.C. § 701 Subchapter I, for the purpose of *National Service Life Insurance,* states:

§ 701. Definitions.

For the purpose of this subchapter—

\* \* \* \* \* \*

(4) The terms "parent", "father", and "mother" mean a father, mother, father through adoption, mother through adoption, persons who have stood in loco parentis to a member of the military or naval forces at any time before entry into active service for a period of not less than one year, and a stepparent, if designated as beneficiary by the insured."

However, no definition of the term "parent" is found in 38 U.S.C. §§ 765 et seq., a different subchapter, and the one pertaining to Servicemen's Group Life Insurance, the type here in question. Since there is no definition in the subchapter concerning the insurance in question, the term is in law intended in its usual and ordinary sense, i. e., a parent is one who begets an offspring. Webster's New International Dictionary, 2nd Ed.; Miller v. United States, 123 F.2d 715 (8th Cir. 1942); Nunn v. Nunn, 81 N.M. 746, 473 P.2d 360 (1970). Congress will be presumed to have used a word in its usual and well-settled sense. United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940). It is to be particularly noted that *Nunn* deals with the definition of the word as used in 38 U.S.C. § 770(a) Fourth.

This interpretation is further strengthened by the fact that this case is not the first instance in which the use of the word "parents" in 38 U.S.C. § 770(a) Fourth has caused concern. In a House Committee on Veterans Affairs Report, No. 91–1025, accompanying H.R. 6661, 91st Congress, Second Session, is clearly shown the construction the present statute has received by the Veterans Administration, which construction has obviously been acquiesced in by the House of Representatives. In a letter to the Chairman of the Committee, accompanying the report, the Administra-

tor of Veterans Affairs stated in part: "Existing law does not define the terms widow, widower, child, or parent for SGLI purposes, thus presumably leaving such definitions to local state law." * * * "However, experience has shown that in many cases one parent abandoned the child during his minority, but under the present law, he or she is nevertheless eligible for one-half of the insurance." The Veterans Affairs Committee recommended the passage of an amendment to the existing statute which would have defined "parent." At page 62 of the report is the proposed definition of the word "parent," which includes the following: "No person who abandoned or wilfully failed to support a child during his minority or consented to his adoption may be recognized as a parent for the purposes of this subchapter." The amendment was not passed. The significance of the House Report is twofold. It shows the construction placed on the existing statute by an agency administering the same, and it also shows beyond any doubt that the omission of a statutory definition of the word "parent" in the existing statute was not due to inadvertence, for the matter was brought to the attention of the House, which declined to change the law.

The claim of the stepmother, Mary Belle Warner, that the natural mother, Elizabeth Reed, had abandoned the child and thus had made herself ineligible to receive benefits as a parent of the child is thus without any substance. Had the amendment mentioned in the House Report passed, she may have prevailed if the court decided as a matter of fact that the natural mother had abandoned the child.

It is not necessary for the court to decide whether or not the natural mother abandoned the child, for she is entitled to the insurance proceeds whether or not she did, and the court specifically does not make any finding of fact concerning this matter. In passing, however, the court notes that where a child is awarded to one parent as a result of divorce proceedings, without more, this court would be quite reluctant to hold the other parent had abandoned the child.

For the foregoing reasons, the court is of opinion that the natural mother, Elizabeth Reed, is the lawful beneficiary and entitled to the insurance proceeds in question.