PRUDENTIAL INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

Winona ELLWEIN, and George L.
Reed, Defendants.

No. Civ. 74–571.

United States District Court,
W. D. New York.

July 29, 1977.

Lowell Grosse, Miles, Cochrane, Grosse & Rossetti, Buffalo, N. Y., for plaintiff.

Lawrence D. Chase, Webster & Chase, Rochester, N. Y., for defendant Ellwein.

Philip S. Gellman, Gellman & Gellman, Niagara Falls, N. Y., for defendant Reed.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

ELFVIN, District Judge.

This interpleader action was instituted by the Prudential Insurance Company of America ("Prudential") under 28 U.S.C. §§ 1335 and 1397 asking this Court to settle the claims by defendants Ellwein and Reed to one-half of the proceeds from a life insurance policy issued by Prudential on the life of a serviceman, Robert Kevin Reed, which policy was issued pursuant to Subchapter III of Chapter 19 of Title 38 of the United States Code (38 U.S.C. §§ 765-779), entitled Serviceman's Group Life Insurance. By order of this Court filed November 17, 1975, Prudential was discharged from further liability upon the deposit of $10,283.60 in the registry of this Court, which sum represented the one-half of the insurance proceeds which is in dispute. The remaining one-half of such proceeds was indisputably payable to defendant Ellwein. This action proceeded to trial before me without a jury to settle the claims of defendants to the deposited proceeds. Defendants are the natural parents of the deceased serviceman.

## FINDINGS OF FACT

From the testimony of witnesses and the documents admitted into evidence from that trial I make the following findings of fact.

Specialist Fourth Class Robert Kevin Reed was on active duty with the United States Army at the time of his death on June 12, 1974. He was unmarried and without children. Upon entering the Army in October of 1971, he executed a form No. VA 29–8286 entitled "Servicemen's Group Life Insurance Election" whereon he designated his mother ("Winonia [sic] Ellwein") as the sole beneficiary of his Servicemen's Group Life Insurance policy. On May 9, 1973 he executed another form No. VA 29–8286.[1] On such form he

---

1. Although Winona Ellwein alleges in her amended answer that the validity of her son's signature on the beneficiary form of May 9, 1973 is in question, I find that the signature and handwriting appearing on that form is that of the decedent. Testimony by defendant Ellwein and decedent's sisters Mary (Reed) Vetter, Michelle Reed and Cindee Reed was inconclusive. Identification of handwriting is to be determined by the trier of fact. As such, I am not restricted to the opinion of the witnesses as to the signature, but I may refer to other documents in evidence which contain the decedent's handwriting. A review of the other documents, especially Exhibit 6 (a bank signature card) and Exhibit 8 (a letter from Robert Kevin Reed to his mother), support my finding that the signature on the May 9, 1973 form is that of the decedent. I further find that the completed form was "received * * * in the uniformed

did not designate Winona Ellwein as the only beneficiary but instead filled in the space for naming a beneficiary with the phrase, "By law". On the front of such form, the following instruction appears:

"IMPORTANT—You must write in the spaces below (1) 'By Law' in your own handwriting if you wish the law to apply (as explained on reverse) or, (2) The names and other information for persons you want to receive your insurance."

On the reverse side of form No. VA 29–8286 the following appears:

"PROVISIONS OF THE LAW FOR PAYMENT OF INSURANCE

"If you do not name a beneficiary to receive the proceeds of your insurance, it will be paid under the provisions of the law, to your survivor(s) in the following order:

1. Widow or widower; if none, it is payable to
2. Child or children in equal shares with share of any deceased child distributed among the descendants of that child; if none, it is payable to
3. Parent(s) in equal shares; if none, it is payable to
4. A duly appointed executor or administrator of the insured's estate, and if none to
5. Other next of kin.

NOTE: If you do not want your insurance paid as provided above, you must name the beneficiary(ies) in Part 2."

Between May 9, 1973 and his death, no other form No. VA 29–8286 was executed by defendants' son.

Decedent was survived at death by his natural parents[2] and three sisters. The natural parents were divorced May 22, 1961 and pursuant to the decree, which incorporated a prior separation agreement, custody of decedent and his three sisters was grant-

ed to their mother. The separation agreement required defendant Reed to pay to defendant Ellwein the sum of forty dollars a week for the children's support.

Later in 1961, defendant Ellwein married Vernon Ellwein and soon thereafter Winona moved with her new husband and the children of both to accommodate his employment. They moved first to South Dakota and in 1965 to California where they now reside. Defendant Reed remained in Youngstown, N.Y. where defendants had resided and where he presently lives.

While the children and their mother resided in New York State, defendant Reed met his support obligations. However, from about August 17, 1962 until November 9, 1962, he paid only $28 a week. Thereafter and until October 8, 1965 defendant Reed made only sporadic payments. However, during that time he paid about $500 for medical services rendered to the children. On October 8, 1965, he began making monthly payments to defendant Ellwein through the Niagara County Probation Department for the support of the children. The amounts varied between ten and twenty dollars per month. This method of payment continued until September 7, 1967 when defendant Reed began making his support payments to the District Attorney's Office for County of San Joaquin, California through the Niagara County Probation Office. From September of 1967 to December of 1971 the payments were twenty dollars per month; thereafter they were halved.

In 1961, defendant Reed's net weekly earnings were about $85. In the Fall of 1961, he had about $5,000 in debts and was adjudged a bankrupt. Early in 1963, as a result of a disallowance by the Internal Revenue Service of dependency deductions for the four children, he was required to pay Federal and State back taxes amount-

---

services" (see 38 U.S.C. § 770, *infra*) on the day of its execution.

2. Testimony was offered to show that Winona Ellwein's second husband, Vernon Ellwein, and not George Reed was considered by Robert Kevin Reed as his father. This is irrelevant

without the showing of an adoption by Vernon Ellwein. The term "parent" under § 765(9) is limited to the categories there defined and does not include a person who is a stepparent or a person in loco parentis.

ing to $314. In August of 1963, he married a woman who had four children, comparable in ages to his own children. In 1966, his net weekly earnings were about $95. No other evidence was offered as to his financial condition.

In addition to support payments, defendant Reed had other contacts with his children including his deceased son. He talked to his children and sent token gifts every Christmas. He also sent letters and small gifts at other times including the occasion of his son's graduation from high school.

## CONCLUSIONS OF LAW

The distribution of proceeds from this Servicemen's Group Life Insurance policy is subject to the provisions of 38 U.S.C. § 770 which states in pertinent part:

"§ 770. Beneficiaries; payment of insurance

"(a) Any amount of insurance under this subchapter in force on any member [e. g., a person on active duty in the uniformed services] * * * on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries as member * * * may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemen's Group Life Insurance, or (2) in the administrative office established under section 766(b) of this title if separated or released from service, or if assigned to the Retired Reserve, and insured under Servicemen's Group Life Insurance, or if insured under Veterans' Group Life Insurance;

* * * * * *

Fourth, if none of the above, to the parents of such member * * * or the survivor of them; * * *."

Section 765(9) defines "parent" as including, among others, the "father of a legitimate child, [the] mother of a legitimate child [and the] father through adoption." It then states:

*"No person who abandoned or willfully failed to support a child during his minority, or consented to his adoption may be recognized as a parent for the purpose of this subchapter.* However, the immediately preceding sentence shall not be applied so as to require duplicate payments in any case in which insurance benefits have been paid prior to receipt in the administrative office established under subsection 766(b) of this title of sufficient evidence to clearly establish that the person so paid could not qualify as a parent solely by reason of such sentence." (Emphasis added).

Prior to the amendment of section 765 in late 1971, the law did not define the term "parent" and presumably left such definition to local state law. As a result, a parent who abandoned a child during his minority was eligible for the proceeds of a serviceman's insurance policy. *Manning v. Prudential Insurance Company of America,* 330 F.Supp. 1198 (D.Md.1971); *Prudential Insurance Company of America v. Warner,* 328 F.Supp. 1128 (W.D.Va.1971). The 1971 amendment was expressly passed to change that situation among others and to produce uniformity in the area defining "parent". *See,* Senate Committee on Veterans' Affairs Report No. 92–545 accompanying H.R. 9097, U.S.Code Cong. & Admin.News, 92nd Cong., 1st Session, 1971, pp. 2127–30.

Defendant Ellwein opposes defendant Reed's claim to one-half of insurance proceeds on two alternate grounds. Firstly, she alleges that the operative form designating the serviceman's beneficiaries was the one executed in October of 1971 because there is a lack of proof as to the validity of the signature on the form executed May 9, 1973. My findings re the signature on the May 9, 1973 form (Pltf. Exh. 5) and its receipt compel determination of that argument adversely to defendant Ellwein.

Secondly, she alleges that, inasmuch as defendant Reed abandoned or willfully

failed to support their son during his minority, defendant Reed is precluded pursuant to section 765(9) from sharing in the insurance proceeds as a "parent". In applying this subsection there is no express direction in the statute or its legislative history for defining "abandoned" or "willfully failed to support". How these terms are defined under New York law is not controlling. Congress has consciously removed this matter from interpretation under state law. Title 38 U.S.C. §§ 765 *et seq.* is the supreme law of the land and controls over conflicting state law with respect to disposition of proceeds of policies issued thereunder. *Johnson v. Prudential Insurance Company of America*, 182 Neb. 673, 156 N.W.2d 812 (1968). In defining these terms, I rely upon the maxim that statutory words generally are presumed to be used in their ordinary and usual sense.

■■■ The facts do not support a conclusion that defendant Reed abandoned his son. In order to constitute abandonment, there must be a relinquishment of *all* parental rights in the child including custody with an intention that the severance be permanent. This is not the case here. Defendant Reed did continue to make contributions to the support of the insured and did continue to demonstrate some interest in his children. The distance between New York and California and the fact that it was defendant Ellwein who took the children away from the pre-divorce marital abode mitigate against a contrary finding based upon any failure of this natural father to visit or more frequently communicate with his children. There is no showing that defendant Reed abandoned decedent.

■■■ In determining whether defendant Reed failed to support his son, defendant Ellwein contends that the fact that her ex-husband did not meet the requirement of paying $40 a week as expressed in the Separation Agreement demonstrates a willful failure to support the insured during his minority. That is, however, insufficient to carry her burden in opposing George Reed's claim.[3]

■■■ Willfulness (in failing to support) requires a showing that defendant Reed was aware of his legal obligation to support *and* that he intentionally and voluntarily failed to support. Beyond evidence of the separation agreement and the record of his payments, little was offered demonstrating his ability to pay. His modest salary, apparent lack of other assets and his financial condition substantially negate whatever inference of willful failure to support can be drawn from his failure to meet literally and fully his obligation under the separation agreement.

■■■ In addition to her lack of demonstration of willfulness, defendant Ellwein has failed to prove by a preponderance of the evidence that defendant Reed failed to support decedent during his minority. The term used in the statute is "failed to support". This term does not equate with either the term "did not properly support" or "did not support to the best of his ability". When viewed in the context of the statute and its purpose, a failure to support must be such that it would be substantially comparable in magnitude to abandonment or consent to adoption. Temporary periods of non-support or inadequate support are insufficient. Viewing this father's support of his son during the entirety of his minority, a conclusion of failure to support is not warranted. There is no claim that defendant Reed failed to furnish support before the divorce and during the first nine years of the son's life. The same is true for the first year after the divorce. For the period between November 1962 and September

---

**3.** The burden of proof is upon the party seeking to oppose the claim of an otherwise qualifying "parent". Although the statute does not expressly place the burden upon such party, it does follow from the operation of 38 U.S.C. §§ 765 *et seq.* In order to file a claim, a "parent" is not required to make an affirmative showing or even an affirmative declaration that he or she did not abandon, fail to support or consent to the adoption of the insured. *See*, VA form 8283, Claim for Death Benefits. Further, the last sentence of section 765(9) places the burden of showing by clear evidence the disqualification of a "parent" upon a party seeking to bar a payment to a parental claimant.

1967, defendant Reed furnished only token support payments and some medical payments. Thereafter and until his son joined the Army in October of 1971, the support contributions were about half that required under the separation agreement. Taking under consideration the above history of support, the standard for disqualification of a parent under section 765(9) has not been met.

For the above reasons, I am of the opinion that the natural father, defendant George L. Reed, is not disqualified as a parent and as a lawful beneficiary and is entitled to one-half of the proceeds of the insurance policy in question.

It is therefore hereby

ORDERED that defendant George L. Reed is entitled pursuant to 38 U.S.C. § 770(a) to one-half of the proceeds of Robert Kevin Reed's Servicemen's Group Life Insurance policy; and it is further

ORDERED that the Clerk of the Court shall enter judgment consistent with this ruling and pay over to George L. Reed or his authorized agent moneys paid into this Court by Prudential Life Insurance Company of America pending the outcome of this action.