The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

Frederick T. BURNS and Lloyd Newland, Defendants.

Civ. A. No. 79–1769–F.

United States District Court, D. Massachusetts.

May 8, 1981.

Richard D. Harrington, Ciccia & Kenney, Springfield, Mass., for plaintiff.

Frederick T. Burns, pro se.

Charles Donelan, Diane B. Pierce-Gonzalez, Bowditch & Dewey, Worcester, Mass., for defendant Lloyd Newland.

## MEMORANDUM

FREEDMAN, District Judge.

### I.

Prudential Insurance Company of America (Prudential) filed this interpleader action pursuant to 28 U.S.C. § 1335 alleging that it was unable to ascertain to whom to pay the benefits of a Servicemen's Group Life Insurance (SGLI) Policy on the life of William Newland, also known as William Berger, Jr. Prudential deposited $21,946 in the registry of this Court, and was subsequently discharged with the assent of the defendants.

Defendant Frederick T. Burns (Burns) answered the complaint and moved for judgment on the pleadings; defendant Lloyd Newland, following appointment of counsel, answered and moved for summary judgment. Following oral argument, I entered a Memorandum and Order in which I indicated that because only the pleadings were properly before the Court for consideration under F.R.Civ.P. 56(c), the two motions were functional equivalents. Moreover, I noted that based on my review of the pleadings, the record was inadequate for purposes of resolving the case. I instructed the parties to present their factual assertions in proper form within 45 days, and stated that I would take the matter under advisement, treating defendants' motions as cross-motions for summary judgment.

The parties have followed my instruction, and have submitted affidavits and depositions on written questions. At the request of defendant Newland, the parties again appeared for oral argument. Based on the arguments of counsel in their memoranda and at oral argument, and my review of the pleadings, affidavits, and depositions on special questions, I have determined that there are no genuine issues of material fact and thus this case is ripe for disposition through summary judgment.

### II.

William Newland, also known as William Berger, Jr. ("the insured") died in a swim-

ming accident in New Jersey on July 27, 1978 while a member of the Massachusetts Army National Guard. Prudential insured his life in the amount of $20,000 under the Servicemen's Group Life Insurance Program. The insured had not named a beneficiary of the policy specifically, but instead designated that the policy benefits were to be distributed "by law." He left no widow or children.

Defendant Frederick T. Burns was appointed administrator of the estate of the insured by the Hampden County Probate Court in Springfield, Massachusetts on April 3, 1979. The petition for appointment filed with that court listed Emma Yarbrough of Holyoke, Massachusetts as the insured's mother and her signature evidences her assent to the petition for appointment.

Defendant Lloyd Newland, a resident of Pickens, Mississippi, was appointed administrator of the estate of the insured by decree of the Chancery Court of Yazoo County, Mississippi on May 25, 1979.

The insured was born in West Palm Beach, Florida on February 1, 1958. His birth certificate lists William Berger, Sr. as his father and Emma Coggins as his mother. He lived with both of his parents in Florida until 1959 when his father left Florida to find work and was not heard from again. Thereupon, his mother and he moved to Mississippi with a man named Walter Doddy to live with Doddy's parents, where they stayed for three years. Doddy left the insured's mother, and she in turn left Mississippi for Florida to live with her mother. Upon her departure, she left her son with Lloyd Newland, with whom he lived from 1962 until 1977. In 1979, he left Mississippi and joined his mother, now named Emma Yarbrough, who had moved to Holyoke in 1974.

Although the insured took "Newland" as a surname, Lloyd Newland never legally adopted the insured. During the fifteen years he lived with Newland in Mississippi, the insured resided at the Newland home, ate his meals there, was registered in school and provided clothes, medical care, religious education and other necessaries by Newland, who was assisted by his wife in raising the insured. Newland estimates that provision of these services cost approximately $1,500 per year.

In his deposition on answers to written questions, Lloyd Newland states that he never received any financial assistance from the insured's natural mother, and that she contacted the insured only once between 1962 and 1977. However, he also states that she never promised to pay, nor did he ask or expect her to pay for the insured's board, room, clothing, education or any other manner of support. Lloyd Newland also states that at the time of the insured's death in 1978, neither the insured nor his mother owed Newland any money; the insured did not owe money to anyone in Mississippi; and the insured left some clothing with him and with a man for whom the insured used to work in Canton, Mississippi.

When the insured came to Holyoke in 1977, he was briefly employed by the Holyoke Park Department through a program under the Comprehensive Employment Training Act (CETA). On his application for employment, he listed his residence as that of his mother and stated that she should be contacted in case of emergency. In February 1978, he joined the Massachusetts Army National Guard. On a form entitled "Servicemen's Group Life Insurance Selection" dated February 24, 1978, the insured identified himself as William Newland, listed Lloyd Newland as his father and Emma Yarbrough as his mother.

Following the death of the insured, the Office of Servicemen's Group Life Insurance determined that neither the insured's mother, nor his natural father, William Berger, Sr., qualified as parents within the statutory definition of that term under 38 U.S.C. § 765(9). While the evidence of record reveals that the insured left no widow or children, his mother Emma Yarbrough in her affidavit states that she is also the mother of six other children.[1]

1. Emma Yarbrough stated in her affidavit that she was also the mother of Alfonzo Eastling, born May 4, 1951, Tylone Davis, born May 25, 1955, Shirley Ann Davis, born September 26, 1956, Arthur Yarbrough, born April 13, 1968, and Alton and Alvin Yarbrough, twins born on July 15, 1969.

### III.

Distribution of benefits under SGLI policies is governed by 38 U.S.C. § 770(a), which states in pertinent part:

Any amount of insurance [under the SGLI program] in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death in the following order of precedence:

First, [to beneficiaries designated by the insured];
Second, if there be no such beneficiary to the widow or widower [of the insured];

Third, [to children of the insured].
Fourth, if none of the above, to the parents of [the insured] or the survivor of them;
Fifth, if none of the above, to the duly appointed executor or administrator of the estate of [the insured];
Sixth, if none of the above, to other next of kin of [the insured] entitled under the laws of domicile of [the insured] at the time of his death.

*Id.* At first blush, this distribution scheme would seem to require payment of the SGLI policy benefits to the insured's mother and father. However, 38 U.S.C. § 765(9) defines "parent" in such a way as to exclude the deceased's natural parents:

The term "parent" means a father of a legitimate child, mother of a legitimate child, father through adoption, mother through adoption, mother of an illegitimate child, and father of an illegitimate child, but only if (a) he acknowledged paternity in writing signed by him before the child's death; or (b) he has been judicially ordered to contribute to the child's support; or (c) he has been judicially decreed to be the father of such child; or (d) proof of paternity is established by a certified copy of the public record of birth or church record of baptism showing that the claimant was the informant and was named as father of the child; or (e) proof of paternity is established from service department or other public records, such as school or welfare agencies, which show that with his knowledge the claimant was named as father of the child. *No person who abandoned or willfully failed to support a child during his minority, or consented to his adoption may be recognized as a parent for purposes of this subchapter. . . .*

*Id.* (emphasis supplied). The determinations of the Office of Servicemen's Group Life Insurance that the insured's parents abandoned him and thus do not qualify as "parents" has not been challenged here, nor does it appear from the evidence that it could be. *See Hafley v. McCubbins,* 590 S.W.2d 892 (Ky.App.1979) (Court canvasses jurisprudence of sister states to aid in construction of term "abandonment," and notes the following areas worthy of consideration: conscious disregard of or indifference to parental obligations; leaving a child in the care of others on a permanent or indefinite basis; failure to provide support; and failure to fulfill responsibilities of care, training, and guidance during the child's formative years.)

38 U.S.C. § 770(b) provides that:

If any person otherwise entitled to payment under this section does not make claim therefor within one year after the death of [the insured], or if payment to such person within that period is prohibited by Federal statute or regulation, *payment may be made in the order of precedence as if such person had predeceased [the insured],* and any such payment shall be a bar to recovery by any other person.

*Id.* (emphasis supplied). Thus for purposes of the SGLI distribution scheme set forth in 38 U.S.C. § 770(a), payment of benefits of the SGLI policy on the insured's life may be made as though the insured's natural parents, who are disqualified from receiving payment under 38 U.S.C. § 765(9), predeceased the insured.

Before turning to the conflicting claims of the defendants in their capacities as administrators of the estate of the deceased, I must first address defendant Newland's argument that he should receive the benefits of the SGLI policy on the life of the insured on the basis that he is a *de facto* parent of the insured, that is, that he in every way fulfilled the responsibilities of a father to the deceased and should not be denied benefits because of his failure to adopt the deceased. While Newland maintains that good policy and equitable considerations favor this result, I am not persuaded.

First of all, Newland simply does not come within the statutory definition of a parent. If congressional intent was ambiguous, an expansive construction of the term might be proper. However, the present statutory definition of parent was enacted in 1971, Act of December 15, P.L. 92–185, 85 Stat. 642, to remedy, problems which had arisen in interpreting and administering the predecessor SGLI program which contained no definition of the term parent. *See, e. g., Prudential Insurance Company of America v. Warner*, 328 F.Supp. 1128, 1131 (W.D.Va. 1971). The Congress specifically recognized that "[t]he greatest need for uniformity is in the area of children and parents." S.Rept.No. 545, 92nd Cong., 1st Sess. *reprinted in* [1971] U.S.Code Cong. & Ad. News 2127, 2127. Rather than accepting the conflicting results and burdens of administration which resulted from defining the term "parent" by reference to varying state laws of particular jurisdictions, Congress chose to enact a specific federal law definition of the term "parent" for the sake of achieving "uniformity in the disbursement of what are in substantial part federal funds." *Id.* While it may be said that the statute neither itself nor as it is amplified by legislative history explicitly bars the result sought by Newland, I am not convinced that the circumstances of this case are so compelling as to justify what is in effect circumvention of the congressionally established distribution scheme, imperfect though it may be. The legislative effort to achieve uniformity by defining the term "parent" for purposes of federal law is entitled to the utmost respect. *Cf. Prudential Insurance Company of America v. Ellwein*, 435 F.Supp. 248, 250 n. 2 (W.D.N.Y.1977). ("The term 'parent' under § 765(9) is limited to the categories there defined and does not include a person who is a step-parent or a person *in loco parentis.*")

Having disposed of Newland's claim of entitlement to the life insurance benefits as a *de facto* parent, there remains the issue of which administrator, Burns or Newland, is entitled to the benefits of the SGLI policy on the life of the insured. 38 U.S.C. § 770(a) offers little guidance in this respect, stating only that the benefits of the policy are to be paid to the "duly appointed executor or administrator of the estate of [the insured]." *Id.* On the one hand, since federal law does not define what a duly appointed administrator or executor is for purposes of the SGLI distribution scheme, in construing the section, reference might be made to state law as was done for the purpose of defining "parent" prior to the enactment of 38 U.S.C. § 765(9) in 1971. On the other hand, application by a federal court of state law to particular fact situations in order to determine whether an individual is a parent would seldomly, if ever, involve interference with a prior state court determination that an individual was a parent for purposes of state law. However, as the instant case reveals, for a federal court to rule which defendant is the "duly appointed administrator" of the insured's estate to the exclusion of one defendant when both defendants have presented evidence of their appointment by courts of competent jurisdiction in two states would necessarily require sustaining one defendant's attack on the appointment of the other.

There is no federal general common law, *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1937), and certainly no federal common law specifically directed toward resolving contests of who is the duly appointed administrator of an estate; indeed, federal courts are "not to interfere with . . . probate proceedings" as a general rule, and have "no

jurisdiction to probate a will or administer an estate. . . . " *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). No doubt Congress may have contemplated that federal courts, pursuant to interpleader jurisdiction, would be required to construe the provisions of the SGLI laws and in particular the distribution scheme therein established. However, I am not convinced that such contemplation is grounds to find a license to create "federal specific common law" to determine who is a duly appointed administrator for purposes of the SGLI distribution statute after a state court has ruled on the issue.

The arguments advanced by the parties are essentially challenges to the appointment decrees of the respective state courts involved. For his part, defendant Newland asserts that the appointment of defendant Burns was sought by Emma Yarbrough, who, for purposes of the SGLI distribution scheme, is to be treated as though she predeceased the insured. Based on this expansive reading of 38 U.S.C. § 770(b), Newland suggests that defendant Burns is a mere conduit for the delivery of SGLI benefits to Emma Yarbrough indirectly, in circumvention of the federal bar on her directly receiving the benefits. Defendant Burns counters by attacking the decree of appointment of Newland, arguing that no heir at law or next of kin nor creditor of the insured requested Newland to seek appointment; that the evidence suggests that the insured was a domiciliary of Massachusetts at the time of his death, and that he as the Massachusetts administrator is thus the domiciliary administrator; and that the Mississippi Chancery Court had no jurisdiction to appoint an administrator because the insured's domicile was in Massachusetts, not Mississippi, and there are no assets of the decedent in Mississippi.

Absent truly compelling circumstances, this Court owes the respective decrees of appointment of the Probate Court of Hampden County, Massachusetts and the Chancery Court of Yazoo County, Mississippi, the respect due the decree or judgment of any court of competent jurisdiction acting in the normal course of its business.

Challenges to the appointments of administrators are not properly brought in federal court after the fact, but instead should be heard in state courts of competent jurisdiction. To the extent that advancing such challenges promotes inefficiency in the distribution of the proceeds of the SGLI benefits to ultimate beneficiaries under state law, or that foregoing challenges result in redundant costs of probate, such inefficiency and redundancy of costs are attributable to our federalist system and the incongruities which result from partial assumption by the federal government of the task of defining relationships and establishing distribution schemes.

 Both defendants have invited this Court to resolve the issue of whether federal law bars distribution of any of the proceeds of the SGLI policy on the insured's life as part of the insured's estate to his mother Emma Yarbrough. While it is clear that direct payment to her as a parent is barred by 38 U.S.C. §§ 765(9) and 770(b), the applicable laws do not explicitly preclude distribution of benefits to parents who have abandoned their child within the meaning of § 765(9). Normally, devolution of property is governed by state law, yet, as the Supreme Court has recognized, where there is an applicable federal statute, that statute prevails. *United States v. Oregon*, 366 U.S. 643, 648–9, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). In the case at bar, although there is no specifically applicable federal statute involved, there clearly is an articulated federal policy which may well be thwarted by allowing abandoning parents to share in the distribution of a decedent's estate when payment of benefits is made to an administrator or executor of the estate.

However, I must decline the invitation of the defendants to rule upon this issue. Neither the insured's mother nor his father are presently before the Court, and challenges to whatever manner of distribution the respective administrators might select are simply not ripe at this time, and a "ruling" on the issue presented would be in essence

an advisory opinion to the defendants. Federal courts are without jurisdiction to advise parties how to act with regard to cases or controversies which may arise at a subsequent time. *See, e. g., United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

## IV.

On the basis of the foregoing, I find that both defendants Newland and Burns are "duly appointed administrators" of the estate of the insured, and there being no genuine issues of material fact remaining, conclude that each administrator is entitled to one-half of the proceeds deposited by Prudential in the registry of this Court. Additionally, I have determined that the issue of whether the insured's parents may share in the distribution of the insured's estate is not ripe for decision at this time. Therefore, partial summary judgment shall enter for each defendant in the amount of $10,748.

Partial summary judgment for defendant Burns; partial summary judgment for defendant Newland.