Gene LANIER, Plaintiff–Appellee,

v.

Ellis TRAUB, Prudential Insurance Company of America, Defendants–Appellants.

No. 90–5367.

United States Court of Appeals, Eleventh Circuit.

June 24, 1991.

Jeffrey A. Rynor, Miami, Fla., for Ellis Traub.

Shelley H. Leinicke, Fort Lauderdale, Fla., for Prudential Ins. Co.

Jonathan M. Fordin, Thomas Martin Pflaum, Miami, Fla., for plaintiff-appellee.

Before COX and BIRCH, Circuit Judges, and GIBSON *, Senior Circuit Judge.

BIRCH, Circuit Judge:

Defendants-appellants Ellis Traub and Prudential Insurance Company of America ("Prudential") appeal from an order of the United States District Court for the Southern District of Florida (the "District Court") granting plaintiff-appellee Gene Lanier's motion for summary judgment. 734 F.Supp. 463. The District Court concluded that Lanier, the stepfather of Daniel Howard Traub ("Decedent"), was the proper co-beneficiary of the proceeds of a Servicemen's Group Life Insurance ("SGLI") Policy issued to Decedent. We conclude, however, that such proceeds are to be divided equally between Decedent's natural father, Ellis Traub, and natural mother, Mary Lanier. Accordingly, we REVERSE the District Court's grant of summary judgment.

I.  BACKGROUND

Decedent was a sergeant in the United States Army stationed in Germany at the time of his death on April 1, 1988. He was survived by his natural parents, Mary

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa- tion.

Lanier and Ellis Traub, and his stepfather, Gene Lanier. Although Gene Lanier had lived with Mary Lanier and Decedent since Decedent was a small child, Gene Lanier never formally adopted Decedent.

On or about November 24, 1987, Decedent executed two military forms. The first, entitled "SGLI Election", concerned the distribution of the proceeds of Decedent's SGLI policy. The SGLI Election instructed Decedent either to designate beneficiaries to receive the proceeds or to write the words "by law" on the form if he wished the law to apply. The reverse of this form explained the consequences of the latter as follows:

### IMPORTANT—READ CAREFULLY PROVISIONS OF THE LAW FOR PAYMENT OF INSURANCE

If you do not name a beneficiary to receive the proceeds of your insurance, it will be paid under the provisions of the law, to your survivor(s) in the following order:

1. Widow or widower; if none, it is payable to
2. Child or children in equal shares with the share of any deceased child distributed among the descendants of that child; if none, it is payable to
3. Parent(s) in equal shares; if none, it is payable to
4. A duly appointed executor or administrator of the insured's estate, and if none to
5. Other next of kin.

NOTE: If you want a specific person to receive your insurance, then you must name the person in Part 2, otherwise, it will be paid as provided above.

R:40, Exhibit B. Decedent wrote "by law" on his SGLI Election form, thereby adopting the above method of distribution. R:40, Exhibit A.

On that same day, Decedent also completed Defense Department Form 93 ("Form 93"), a record of emergency data. Form 93 instructed:

This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty, and, to designate beneficiaries for certain benefits if you die.

R:40, Exhibit C. Decedent designated Mary Lanier and Gene Lanier as co-beneficiaries of any death gratuity, unpaid pay and allowances. *Id.* In so doing, he described them as "parents." Decedent responded to the request for his father's name and address as follows:

GENE LANIER/[ADDRESS] (STEPFATHER).

*Id.* Ellis Traub was not listed on Decedent's Form 93.

Following Decedent's death, claims were made for the proceeds of his SGLI policy by Mary Lanier, Gene Lanier and Ellis Traub. Pursuant to Decedent's "by law" designation on his SGLI Election, Prudential distributed the proceeds of Decedent's SGLI policy in equal shares to Decedent's natural parents, Mary Lanier and Ellis Traub. Gene Lanier subsequently brought suit against Prudential and Ellis Traub, seeking recovery of those proceeds of the SGLI policy paid to Ellis Traub. Relying on Form 93, Gene Lanier claimed that Decedent intended the proceeds of his SGLI policy to be paid to Mary and Gene Lanier. After cross motions for summary judgment were filed by the parties, the District Court granted summary judgment in favor of Gene Lanier.

## II. DISCUSSION

Congress enacted the Servicemen's Group Life Insurance Act, 38 U.S.C. § 765 *et seq.* (the "Act"), to provide group life insurance coverage at a reasonable rate to members of the armed forces. *Ridgway v. Ridgway*, 454 U.S. 46, 50, 52, 102 S.Ct. 49, 52, 53, 70 L.Ed.2d 39 (1981); *Prudential Insurance Co. v. Moorhead*, 916 F.2d 261, 262 (5th Cir.1990). Under the provisions of the Act, the United States purchases the life insurance coverage from qualified private insurance companies. *Ridgway*, 454 U.S. at 50, 102 S.Ct. at 53; *Moorhead*, 916 F.2d at 262; 38 U.S.C. § 766. An insurance policy is issued to the United States,

and names as insureds each participating service member. *Id.;* 38 U.S.C. § 767. The United States subsidizes this program, contributing that portion of the policy's premium expense traceable to the special mortality risks associated with the armed forces. *Ridgway,* 454 U.S. at 52, 102 S.Ct. at 53; *Moorhead,* 916 F.2d at 262.

When an insured service member dies, the private insurance company pays the proceeds of his SGLI policy "to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death." 38 U.S.C. § 770(a). If the insured did not designate a beneficiary before his death, the proceeds are distributed in the following order: (1) the insured's widow or widower; (2) the insured's children; (3) the insured's parents; (4) a duly appointed executor or administrator of the insured's estate; or, (5) the insured's next of kin under the laws of the insured's domicile at the time of his death. *Id.*

■ The beneficiary designation provisions of the Act are to be interpreted strictly. *Coomer v. United States,* 471 F.2d 1, 6 (5th Cir.1973) [1]; *Stribling v. United States,* 419 F.2d 1350, 1354 (8th Cir.1969). Strict compliance with these provisions is necessary to avoid the placement of undue administrative burdens upon private insurance carriers resulting from disputes concerning the actual donative intent of insured servicemen. *Id.; Santmyer v. Prudential Insurance Co.,* 761 F.Supp. 114, 116 (M.D.Fla.1991). This rule of construction recognizes the difficulty involved in reconstructing a serviceman's donative intentions after his death. *Prudential Ins. Co. v. Parker,* 840 F.2d 6, 7 (7th Cir.1988).

■ To determine whether Gene Lanier is the Decedent's "parent" in the statutory distribution scheme of 38 U.S.C. § 770(a), we apply this rule of strict construction. The Act states:

> The term parent means a father of a legitimate child, mother of a legitimate child, father through adoption, mother of an illegitimate child, and father of an illegitimate child but only if (a) he acknowledged paternity of the child in writing signed by him before the child's death; or (b) he has been judicially ordered to contribute to the child's support; or (c) he has been judicially decreed to be the father of such child; or (d) proof of paternity is established by a certified copy of the public record of birth or church record of baptism showing that the claimant was the informant and was named as the father of the child; or (e) proof of paternity is established from service department or other public records, such as school or welfare agencies, which show that with his knowledge the claimant was named as father of the child. No person who abandoned or willfully failed to support a child during his minority, or consented to his adoption may be recognized as a parent for the purpose of this subchapter.

38 U.S.C. § 765(9).

When interpreting this definition, we find persuasive the well-reasoned analysis of Judge Frank H. Freedman in *Prudential Ins. Co. v. Burns,* 513 F.Supp. 280 (D.Mass.1981), *aff'd,* 676 F.2d 681 (1st Cir. 1982). First, a stepfather is not included within the lengthy definition of "parent" set forth in 38 U.S.C. § 765(9). *Id.* at 284. Second, the intent of Congress to promote administrative efficiency in the area of beneficiary designation with respect to children and parents is clear. This definition of "parent" was added to the Act in 1971 to remedy numerous problems that had arisen in the administration and interpretation of the SGLI system due to the lack of such a definition. *Id.* "Rather than accepting the conflicting results and burdens of administration which resulted from defining the term 'parent' by reference to varying state laws of particular jurisdictions, Congress chose to enact a specific federal law definition of the term 'parent' for the sake of achieving 'uniformity in the disbursement of what are in substantial part federal funds.'" *Id.* (quoting S.Rept. No. 545,

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), this court adopted as precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

92nd Cong., 1st Sess. *reprinted in* 1971 U.S.Code Cong. & Ad.News 2127, 2127).

We agree with Judge Freedman that this "legislative effort to achieve uniformity by defining the term 'parent' for purposes of federal law is entitled to the utmost respect." *Id.* Thus, we conclude that the term "parent" as set forth in 38 U.S.C. § 770(a) and defined in 38 U.S.C. § 765(9) does not include a non-adoptive stepparent. We note that this conclusion is in accord with those of other courts construing the definition of "parent" in similar cases. *See Prudential Ins. Co. v. Ellwein,* 435 F.Supp. 248, 250 n. 2 (D.C.N.Y.1977) ("Testimony was offered to show that [the natural mother's] second husband ... and not [the natural father] was considered by [the decedent] as his father. This is irrelevant without the showing of an adoption by [the stepfather.] The term 'parent' under § 765(9) is limited to the categories there defined and does not include a person who is a stepparent or a person in loco parentis."); *Prudential Ins. Co. v. Warner,* 328 F.Supp. 1128, 1131 (W.D.Va.1971) (Before 38 U.S.C. § 765(9) was enacted, the court held that a stepparent is not a parent for the purposes of 38 U.S.C. § 770(a) because "the term is in law intended in its usual and ordinary sense, i.e., a parent is one who begets an offspring."); *Hafley v. McCubbins,* 590 S.W.2d 892, 895 (Ky.Ct.App.1990) ("[T]hose standing in the shoes of persons in loco parentis, or, for that matter, stepparents, are not parents within the meaning of 38 U.S.C. § 765(9)."); *Nunn v. Nunn,* 81 N.M. 746, 748, 473 P.2d 360, 362 (1970) ("[W]e conclude that the word 'parents' as used in 38 U.S.C. § 770(a) is limited to only the natural parents of the insured and that the statute did not contemplate including a person who was a stepparent...."); *Prudential Ins. Co. v. Johnson,* 200 N.W.2d 115, 118 (N.D.1972) ("To hold that the stepfather must be considered a parent because he had received the child into the family ... would result in the necessity of determining the issue of whether a stepfather is a parent on the facts in each individual case as it arises.... [W]e hold that the word 'parents,' as used in the Servicemen's Group Life Insurance

Act does not include a stepfather who had not legally adopted the insured.").

Accordingly, we REVERSE the District Court's order granting summary judgment in favor of Gene Lanier and REMAND with instructions to enter judgment in favor of Prudential and Ellis Traub.