**BOOS v. REYNOLDS.**

**Civ. No. 2290.**

United States District Court
D. Minnesota, Fourth Division.
May 11, 1949.

Arnold L. Guesmer, Minneapolis, Minn., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., Washington, D. C., and John W. Graff, U. S. Atty., St. Paul, Minn., for defendant.

JOYCE, District Judge.

The taxpayer, Henry P. Boos, seeks to recover the amounts allegedly overpaid as income taxes for the years 1940 and 1941 by reason of the taxpayer's failure to deduct rent paid in each of those years in the amount of $8,232.

In 1929 the taxpayer entered into a ten year lease of premises located in Minneapolis, Minnesota, which premises were to be used for the purpose of conducting his dental supply business. The lease provided for a yearly rental of $20,000, payable in monthly installments of $1,666.66. From December 1932 through May 1936 the taxpayer paid only $1,000 per month of the amount he was required to pay under the terms of the lease, and from June 1936 through June 1939 he paid only $1,200 per month of said amount. As a result, in June 1939 the taxpayer was indebted to the lessor for unpaid rents in the amount of $45,266. Since the taxpayer kept his books on an accrual basis, income taxes for the years between 1932 and 1939 were computed and paid on the basis of his full liability under the lease rather than the amount actually paid. Any action by the Government to recover additional taxes for the years 1932 to 1939 is now barred by the statute of limitations.

In 1939 the taxpayer and his lessor entered into an "Extension Agreement of Lease" which so far as here pertinent provided:

"Whereas, at the request of the tenant, payment of certain portions of said rental was deferred between the dates of October 1st 1933 and June 30th 1939 until the aggregate of such unpaid rentals called for under said lease up to and including June 30th 1939, aggregating $45,266.00 as per itemized statement rendered to the tenant:

"Whereas, the parties hereto have come to an agreement to extend the lease dated September 30th 1929 and expiring December 31st 1939 for a term of five years from January 1st 1940 to December 31st 1944 at a rental of Fifteen thousand Dollars ($15,000.00) per annum payable monthly in advance at the rate of $1,250.00 per month, it being further agreed that the said $1,250.00 rate shall be paid commencing July 1st 1939 making a total of sixty-six (66) months rental to be paid under this agreement at the rate of $1250.00 per month;

"This Extension of Lease being executed on the understanding that a pro rata portion of the unpaid rentals under the existing lease, amounting to $45,266.00, shall be written off and canceled one-sixty-sixth (1/66) portion thereof each month on payment by the tenant of the monthly rental of $1,250.00, commencing July 1st 1939, the said amount to be written off being $686.00 per month."

Following this Extension Agreement, the taxpayer paid $1,250 to the lessor each month. However, on his books, the tax-

payer showed a debit of $686 against the credit of $45,266 standing in the name of the lessor, and an actual cash payment of rent to the lessor of $564 ($1,250 minus $686). Thus, in each of the years 1940 and 1941 the taxpayer failed to report as a deductible business expense $8,232 actually paid as rent to the lessor, but which appeared on the taxpayer's books as a debit against the past due rent account. This failure to deduct the full amount of rent paid to the lessor increased the taxpayer's income taxes for the year 1940 by $4,339.26 and for the year 1941 by $5,870.10. It is these sums, totalling $10,209.36 plus interest, for which recovery is now sought on the grounds that the cancellation of past due rent was a gift, and thus, under the provisions of the Internal Revenue Code, § 22(b) (3), 26 U.S.C.A. § 22(b) (3), properly excludable from gross income. The Code provides as follows:

"Sec. 22. Gross income

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political sub-division thereof, or any agency, or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or * * * profits and income derived from any source whatever. * * *

"(b) Exclusions from gross income. The folllowing items shall not be included in gross income and shall be exempt from taxation under this chapter:

*   *   *   *   *   *

"(3) Gifts, bequests, devises, and inheritances. The value of the property acquired by gift, bequest, devise, or inheritance. * * *"

In addition to the foregoing facts which are not in dispute, the Government concedes that the demised premises were located on Minneapolis' most prominent street where rents are highest, that they were ideally situated for the conduct of the taxpayer's business, and that the past due rent accrued in a period of severe business depression during which it was commonly necessary to reduce rents under long term leases. Up to this point, the parties are in agreement as to the facts, and the Government asks the court to make its determination as to the character of the cancellation solely upon these facts. However, over the government's objection, the taxpayer introduced testimony with respect to the circumstances surrounding the negotiation for, and execution of, the Extension Agreement. This testimony showed that a close and harmonious relationship existed between the taxpayer and his landlord; that the parties had agreed as to the tenure and rent terms of the lease extension without any mention having been made of the past due rent; that this latter matter was first broached by the taxpayer's auditor who was concerned with the credit of $45,266 appearing in the landlord's name on the taxpayer's books; that when this credit was mentioned, the landlord took the position that the taxpayer owed him nothing and that past due rent was to be forgotten; and that the manner of cancellation was proposed by the auditor, and incorporated in the lease extension, solely for income tax purposes.

If this testimony with respect to the negotiation of the lease extension was admissible, it clearly established the cancellation to be an intended gift. But, the Government contends that such evidence was inadmissible since its effect was to vary the terms of a written instrument, the Extension Agreement. I cannot agree with this contention. The ultimate question before this court is whether the cancellation of past due rent was made as a gift to the taxpayer, or as part of the consideration furnished by the landlord for the extension of the lease. It is possible that this question could be answered without any reference being made to the written agreement. This latter instrument is before the court, not that its terms may be construed so as to fix the rights and liabilities of the parties to it, but solely for the purpose of

shedding such light as it may upon the nature of, or motive for, the cancellation. For this latter purpose, it is a proper item of evidence for consideration, but no reason is suggested why it should be the sole item. The testimony to which objection was made was not offered in order to vary any of the terms of the lease extension. Nor does such testimony do violence to any term of the agreement. Although at first blush the agreement, standing alone, might well be taken to indicate a cancellation of past due rent as part of the consideration for the extension, and thus not a gift, the terms used by the parties are not wholly inconsistent with a gift. On this phase of the inquiry, the present situation is similar to that in West v. Commissioner of Internal Revenue, 5 Cir., 1945, 150 F.2d 723, 725, where the amount of plaintiffs' income tax was dependent upon the character of their contract with a third party. In that case the court did not confine its inquiry solely to the written instruments, but looked also "to the circumstances surrounding the parties when the instruments were executed." For the reasons detailed and on the authority cited, the testimony to which objection was made must be considered in the present case.

▇▇▇▇ A consideration of the evidence with respect to the circumstances surrounding the negotiation of the Extension Agreement shows the cancellation of past due rent to have been a gift as that term was defined in Helvering v. American Dental Co., 1943, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, and thus, non-taxable under the provisions of 26 U.S.C.A. § 22(b) (3). As to the scope of the term "gift", the Supreme Court in the cited case had the following to say 318 U.S. at pages 330 and 331, 63 S.Ct. at page 581, 87 L.Ed. 785:

"Gifts, however, is a generic word of broad connotation, taking coloration from the context of the particular statute in which it may appear. Its plain meaning in its present setting denotes, it seems to us, the receipt of financial advantages gratuitously.
. *    *    *    *    *    *
"The fact that the motives leading to the cancellations were those of business

or even selfish, if it be true, is not significant. The forgiveness was gratuitous, a release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute."

From all of the evidence adduced by the taxpayer in the present case, I must conclude that he has brought his landlord's cancellation of past due rent within the above definition and rule. I am not dissuaded from the foregoing conclusion by the Government's attempts to distinguish the American Dental Co. case. Insofar as there is a variance in the facts of the two cases such variance is not material on the question of whether a gift was made. Thus, the fact that the cancellation provision was incorporated in the Extension Agreement did not make the cancellation any the less gratuitous. It gave the donor nothing which he did not otherwise have. Its incorporation in the written instrument did permit the taxpayer to enforce the donor's promise, but in this respect it was merely indicative of an executed or completed gift.

▇▇▇▇ However, accepting the facts to be those contended for by the taxpayer, and further accepting the applicability of the American Dental Co. case to these facts, the Government still contends that the taxpayer cannot recover. This final argument is predicated upon the so-called "tax benefit rule." The Government states this rule to be that "where recovery or some other event which is inconsistent with what has been done in the past occurs, adjustment must be made in reporting income for the year in which the change occurs." According to the Government, "these principles require that the rent cancellations covering rents properly charged off in earlier years on the accrual method of accounting should be included in the income of the taxpayer for the years of cancellation." Admittedly such a rule is inconsistent with the decision in the American Dental Co. case, and the Government concedes that if that decision were the last expression of the Supreme Court on the subject, the tax benefit argument would be untenable. Reliance is placed upon the later cases of Dobson v. Commissioner, 1943, 320 U.S.

489, 64 S.Ct. 239, 88 L.Ed. 248, and Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296, to show adoption by the Supreme Court of a "tax benefit rule" which would operate to defeat the present taxpayer's claim for refund. Again, I cannot agree with the Government's reasoning. In the first place, the decision in the Dobson case cannot be reconciled with the Government's present position for the reason that the court in that case expressly disclaimed the adoption of any "tax benefit rule." [320 U.S. 489, 64 S.Ct. 249.] Furthermore, neither case may be taken to stand for the proposition that a gift becomes income when a taxpayer has derived a tax benefit from the subject matter of the gift. In the face of the American Dental Co. case, which negatives such a proposition, this court does not propose to formulate the rule. Finally, nothing said by the Supreme Court in Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 69 S.Ct. 358, wherein the question of gifts was again before the court, may be taken to indicate disapproval of the decision in the American Dental Co. case.

For the reasons outlined, judgment shall be entered for plaintiff. Findings of Fact, Conclusions of Law, and Order for Judgment may be submitted, of which this Memorandum shall be a part.