**In re the Marriage of: Loretta Marie ANGELL, petitioner, Appellant,**

v.

**Gordon William ANGELL, Jr., Respondent.**

**No. A09–349.**

Court of Appeals of Minnesota.

Dec. 29, 2009.

**34**

Arthur M. Albertson, Duluth, MN, for appellant.

Peter L. Radosevich, Esko, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

The former husband and wife in a marriage dissolution proceeding respectively challenge the district court's classification and division of death benefits paid after their son died during active military duty. The son had named only his mother as the beneficiary of his military life-insurance policy, which, by federal law, also made her his beneficiary in a federal death-gratuity program available to active-duty service members. The district court classified these funds as Loretta Angell's exclusive nonmarital property but awarded Gordon Angell a share to prevent an unfair hardship. Loretta Angell argues that this award violated federal anti-attachment statutes protecting military death benefits. Gordon Angell filed a notice of review challenging the district court's property classification. He argues that the district court should have classified the life-insurance and death-gratuity benefits as marital property because Loretta Angell did not acquire them as a gift, bequest, devise, or inheritance and because she did not overcome the presumption that property accumulated during marriage is marital property.

Because we conclude that the district court properly classified the life-insurance and death-gratuity benefits as Loretta Angell's nonmarital property, we affirm the court's classification. But we hold that federal law prohibits the district court from relying on state law to divide the benefits between the parties. We therefore affirm in part, reverse in part, and remand.

## FACTS

Gordon and Loretta Angell's 27–year marriage ended in dissolution in 2008. A life-insurance beneficiary designation by one of their five children, Levi Angell, is the focus of this appeal.

Twenty-year-old Levi was killed in April 2004 during active military service with the Marine Corps in Iraq. Levi had designated his mother, Loretta Angell, as the sole beneficiary of two funding instruments: his military life-insurance policy and a related federal death-gratuity program. In April 2004, Loretta received $100,000 from the United States government in death-gratuity benefits payable to the designated survivor of her son, a member of an armed force who died during active duty. *See* 10 U.S.C. §§ 1475–80 (2000 & Supp. IV 2004). In May 2004, she received $250,352 from Levi's Servicemembers' Group Life Insurance policy. In August 2005, she received another $150,000 in death-gratuity benefits under a law that directed an additional payment to previously paid beneficiaries. *See* Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109–13, § 1013(b), 119 Stat. 231, 247 (2005) (authorizing retroactive additional payment of death gratuity for deaths incurred in the

theater of Operation Enduring Freedom or Operation Iraqi Freedom). These funds were never commingled with marital property. Instead, they were deposited into a separate bank account in Cleveland, Ohio, in Loretta Angell's name. Except for sums spent by Loretta Angell, at dissolution the funds remained in the Cleveland bank account.

The classification and distribution of those funds were the only issues in the dissolution proceeding. The district court originally held that the life-insurance benefits and the second payment of death-gratuity benefits, totaling $400,352, were Loretta Angell's nonmarital property, and that the first death-gratuity payment of $100,000 was a marital asset to be divided evenly. It also awarded Gordon Angell a cash settlement of $100,000 from Loretta Angell's nonmarital property, relying on Minnesota Statutes section 518.58, subdivision 2, which allows the district court to apportion up to one half of a spouse's nonmarital property to the other to prevent an unfair hardship. The district court therefore ordered Loretta Angell to pay Gordon Angell $150,000: $100,000 from her nonmarital property and $50,000 from marital property. The district court later amended its order to find that all of the life-insurance and death-gratuity benefits, totaling $500,352, were Loretta Angell's nonmarital property. But it still awarded Gordon Angell $150,000, all to come from Loretta Angell's nonmarital property under section 518.58.

On appeal, Loretta Angell argues that the district court erred by awarding Gordon Angell any cash from her nonmarital property or, alternatively, by increasing the amount from $100,000 to $150,000. Gordon Angell filed a notice of review challenging the district court's finding that the life-insurance and death-gratuity bene-fits were Loretta Angell's nonmarital prop-erty.

## ISSUES

I. Did the district court err by classify-ing life-insurance and death-gratuity benefits as nonmarital property?

II. Do the Supremacy Clause and the federal anti-attachment provisions governing the distribution of Service-members' Group Life Insurance and death-gratuity benefits prohibit the district court from apportioning the benefits as divisible nonmarital prop-erty under Minnesota Statutes section 518.58, subdivision 2?

## ANALYSIS

### I

Gordon Angell challenges the district court's classification of the life-insurance and death-gratuity benefits as Loretta Angell's nonmarital property. Whether property is marital or nonmarital is a legal question, which we review de novo, but we defer to a district court's underlying fact findings unless they are clearly erroneous. *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997). All proper-ty, real or personal, is presumed to be marital if "acquired by the parties, or ei-ther of them ... at any time during the existence of the marriage." Minn.Stat. § 518.003, subd. 3b (2008). This presump-tion may be overcome. *Id.* The operative statute does not expressly classify life-in-surance or death-gratuity benefits as ei-ther marital or nonmarital, but it states that property acquired by gift, bequest, devise, or inheritance from a third party to one but not the other spouse is nonmarital property. *Id.*

In determining whether the funds are marital or nonmarital property, we see no material distinction between the death

benefits paid from the military life-insurance policy and the death benefits paid as a gratuity by federal statute. The benefits under both instruments result from a servicemember's death, and both are designed to direct payment to the servicemember's designee. The federal government pays a portion of the servicemember's life-insurance premiums and fully funds the statutory death-gratuity benefit program; both are therefore partial compensation for active military service. *See* 38 U.S.C. § 1969(b) (2006) (requiring the federal government to pay part of the costs of Servicemembers' Group Life Insurance).

Gordon Angell argues that Loretta Angell offered no evidence proving that the benefits were nonmarital and that she therefore failed to overcome the presumption that the property is marital. A party seeking to overcome the presumption must demonstrate by a preponderance of the evidence that the property is nonmarital. *Pfleiderer v. Pfleiderer*, 591 N.W.2d 729, 732 (Minn.App.1999). Loretta Angell's evidence overcomes the presumption. The evidence established that she was designated as Levi's sole beneficiary. Although the Servicemembers' Group Life Insurance Election and Certificate form that Levi completed offered spaces for up to five beneficiaries, he used only one space, naming Loretta Angell alone as his beneficiary. Levi thereby assured that his mother would receive a 100–percent share of the benefits available from both sources. *See* Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109–13, § 1013, 119 Stat. 231, 247 (2005) (providing a death gratuity payable to a beneficiary in proportion to the share of benefits she receives from life-insurance proceeds paid under the SGLI program). Loretta Angell testified correspondingly that all financial documents and correspondence that she received in connection with Levi's life-insurance proceeds and death benefits were addressed to her alone.

Gordon Angell contends that no evidence indicates that Levi intended to exclude him from sharing in the funds. At oral argument, his counsel asserted that it was undisputed that Loretta Angell managed the family's finances and that this requires a finding that the sole designation to his mother meant that Levi intended his parents to share the funds. But the district court made no such finding, and attempting to discern why Levi omitted his father as a designated beneficiary is not our role on appeal. *See Whitaker v. 3M Co.*, 764 N.W.2d 631, 640 n. 1 (Minn.App. 2009) ("[O]ur role ... does not extend to making factual findings in the first instance."), *review denied* (Minn. July 22, 2009). Levi designated his mother as the sole beneficiary, and we therefore accept the district court's implicit finding that Levi intended only his mother to receive the life-insurance and death-gratuity benefits. *See also Lanier v. Traub*, 934 F.2d 287, 289 (11th Cir.1991) ("The beneficiary designation provisions of the [Servicemen's Group Life Insurance] Act are to be interpreted strictly ... to avoid ... disputes concerning the actual donative intent of insured servicemen.").

Gordon Angell argues that the life-insurance and death-gratuity benefits are marital property because they are not one of the types of instruments that the statute specifies as nonmarital property: gift, bequest, devise, or inheritance. *See* Minn. Stat. § 518.003, subd. 3b. He relies on the *Black's Law Dictionary* definition of each term and argues that the proceeds were not a gift because they were not a voluntary transfer from Levi and they were not a devise, bequest, or inheritance because

they did not pass through a will or intestacy.

No Minnesota caselaw answers how to classify death benefits from a child's life-insurance policy that names only one parent as the beneficiary. But multiple cases from other states hold that life-insurance benefits received by one spouse as the sole beneficiary are that spouse's nonmarital property. For example, the Iowa Supreme Court so held in a case similar to ours. *See In re Marriage of Goodwin,* 606 N.W.2d 315 (Iowa 2000). In *Goodwin,* as here, a mother had received life-insurance proceeds as sole designated beneficiary of her son's policy, and the father argued that the singular designation simply reflected the mother's role as manager of the couple's money. *Id.* at 317, 319. The Iowa court rejected the father's claim that the proceeds were marital property. It held that the son's designation of his mother as the only beneficiary supported the conclusion that the proceeds constituted a gift to or inheritance by the mother. *Id.* at 319; *see also Smith v. Smith,* 235 S.W.3d 1, 10–11 (Ky.Ct.App.2006) (holding that life-insurance benefits directed only to the wife upon her parents' death was a gift and therefore nonmarital property); *In re Marriage of Sharp,* 823 P.2d 1387, 1388 (Colo.Ct.App.1991) (holding that life-insurance proceeds directed to only one spouse were a gift and nonmarital property and citing cases from other jurisdictions reaching a similar holding).

■ Consistent with the reasoning of these cases from other jurisdictions, we conclude that the death benefits were a gift. We recognize that the benefits conveyed by the instruments at issue do not resemble the usual "gift" as the term is commonly used. But they have the essential characteristic of a gift, which is a transfer without consideration. *See Roske v. Ilykanyics,* 232 Minn. 383, 392, 45

N.W.2d 769, 775 (1951); *see also Boos v. Reynolds,* 84 F.Supp. 185, 188 (D.Minn. 1949) ("Gift[ ] . . . is a generic word of broad connotation, taking coloration from the context of the particular statute in which it may appear."). The required elements of a gift are "(1) delivery; (2) intention to make a gift; and (3) absolute disposition by the donor of the thing which the donor intends as a gift." *Weber v. Hvass,* 626 N.W.2d 426, 431 (Minn.App.2001), *review denied* (Minn. June 27, 2001). Levi's intention to make a gift to his mother is supported by his beneficiary designation, and there was an absolute disbursement of the funds to her alone. That the delivery was contingent on Levi's death does not prevent these funds from being characterized as a gift, especially under a nonmarital property definition that includes gifts alongside bequests, devises, and inheritances. Like a gift, the funds were transferred without consideration; and like a devise, they were available on the decedent's death based on his specific written designation. Based on the district court's findings, we hold that the life-insurance and death-gratuity benefits were gifts to the sole designated beneficiary in this case and were therefore that beneficiary's nonmarital property.

## II

■ Loretta Angell challenges the district court's division of her nonmarital property. After properly concluding that the life-insurance and death-gratuity benefits were Loretta Angell's nonmarital property, the district court awarded Gordon Angell $150,000 from that property under Minnesota Statutes section 518.58. That statute allows the district court to apportion up to one half of a spouse's nonmarital property to the other if it finds that the other spouse's resources or property are so inadequate that the division of only the

marital property would work an unfair hardship. Minn.Stat. § 518.58, subd. 2 (2008).

The district court's award of nonmarital property accords with the statute's hardship concerns. Gordon Angell is 67 years old and has no bank accounts, retirement savings, or pension. He has no vocational training and never reached high school. He has not held full-time employment since 2002, and his only source of income is monthly Supplemental Security Income payments of approximately $424. He has employment-restricting health problems and lives with his elderly mother. His only assets are a 17–year–old Ford and an entitlement to half of the proceeds from the sale of the Angell's modest home.

■ But despite its meeting the state statutory objectives, the apportionment of nonmarital property was subject to federal anti-attachment provisions, and this raises special concerns. Loretta Angell argues that the district court did not have jurisdiction to direct the distribution of servicemembers' life-insurance or death-gratuity benefits because these benefits fall within the exclusive jurisdiction of the federal government. Gordon Angell claims that this issue arises for the first time on appeal. The record informs us that Loretta Angell raised the argument to the district court in her motion for amended findings and conclusions or for a new trial, and Gordon Angell had an opportunity to respond. Arguments presented for the first time in a posttrial motion are usually not considered on appeal. *See Antonson v. Ekvall,* 289 Minn. 536, 538–39, 186 N.W.2d 187, 189 (1971). However, this court "may review any matter as the interest of justice may require." Minn. R. Civ.App. P. 103.04. We will address the argument's merits.

The Servicemembers' Group Life Insurance and the death-gratuity benefits have anti-attachment provisions imposed by federal law:

> Any payments due ... under Servicemembers' Group Life Insurance ... made to ... a beneficiary shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 1970(g) (2006). The anti-attachment statute for the death-gratuity benefits has identical operative language, except that it adds that the benefits "shall not be assignable except to the extent specifically authorized by law." 38 U.S.C. § 5301(a)(1) (2006). Loretta Angell argues that the district court's division of these benefits was "nothing more than a forced assignment in equity" of a portion of the life-insurance and death-gratuity benefits. She cites Article VI of the United States Constitution and appears to argue that the district court violated the Supremacy Clause by relying on Minnesota Statutes section 518.58 to award Gordon Angell a portion of her nonmarital property.

■ Whether federal law preempts state law is primarily an issue of statutory interpretation, which this court reviews de novo. *Martin ex rel. Hoff v. City of Rochester,* 642 N.W.2d 1, 9 (Minn.2002). The Supremacy Clause defines "the laws of the United States ... [as] the supreme law of the land" prevailing over state laws. U.S. Const. art. VI, cl. 2. The Supreme Court has cautioned, however, that "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516,

112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Federal preemption of state law is therefore generally disfavored. *Martin,* 642 N.W.2d at 11. And preemption of state family law is especially disfavored. State family law cannot be preempted by federal law unless "Congress has 'positively required by direct enactment' that state law be preempted." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting *Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904)). Whether the federal anti-attachment provisions governing the distribution of Servicemembers' Group Life Insurance and death-gratuity benefits preempt the state law allowing division of nonmarital property is an issue of first impression in Minnesota.

The anti-attachment provision of the Servicemembers' Group Life Insurance Act (SGLIA) has preempted other states' family law provisions. In *Ridgway v. Ridgway,* the Supreme Court considered a divorce decree that required an Army sergeant to keep his three children as the beneficiaries of his Servicemembers' Group Life Insurance policy. 454 U.S. 46, 48, 102 S.Ct. 49, 51, 70 L.Ed.2d 39 (1981). The sergeant remarried and designated his wife as his sole beneficiary. *Id.* at 48–49, 102 S.Ct. at 51–52. After the sergeant's death, a Maine court placed a constructive trust on the proceeds in favor of the children. *Id.* at 50, 102 S.Ct. at 52. The Supreme Court reversed and held that the imposition of the constructive trust was inconsistent with the "strong language" of the anti-attachment provision. *Id.* at 60–61, 102 S.Ct. at 57–58. The Court recognized that it was an "unpalatable" outcome because the divorce decree specifically obligated the servicemember to provide for his children, but it emphasized that "Congress has insulated the proceeds of SGLIA insurance from attack or seizure by *any claimant* other than the beneficiary designated by the insured." *Id.* at 62–63, 102 S.Ct. at 59 (emphasis added).

In *Hisquierdo,* the Supreme Court considered a similar statutory prohibition against attachment that protected a federal-entitlement beneficiary. *See* 439 U.S. at 573, 99 S.Ct. at 804. The case involved retirement benefits payable pursuant to the Railroad Retirement Act of 1974. The Act provided that "no annuity [under the Act] shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever." *Hisquierdo,* 439 U.S. at 576, 99 S.Ct. at 805. The California Supreme Court held that the benefits were community property under state law because they would flow in part from the husband's employment during the marriage. *Id.* at 580, 99 S.Ct. at 808. The United States Supreme Court reversed, holding that ordering the husband to pay his wife out of his benefits would deprive the husband of a portion of the benefit that Congress protected for him under the anti-attachment provision. *Id.* at 583, 99 S.Ct. at 809. The court further held that the wife could not obtain an offsetting award of other community property, which would indirectly produce the same net result. *Id.* at 588, 99 S.Ct. at 811–12.

Before *Hisquierdo,* the United States Supreme Court also held California community property law to be preempted by an anti-attachment provision in the National Service Life Insurance Act, the predecessor to SGLIA. *See Wissner v. Wissner,* 338 U.S. 655, 659, 70 S.Ct. 398, 400, 94 L.Ed. 424 (1950). In *Wissner,* a deceased Army major's life-insurance benefits were claimed by both his widow and his parents. The major had designated only his parents as beneficiaries of the policy, but his widow

claimed her community share under state law. The Supreme Court reversed the state court's judgment in favor of the widow, deeming it in "flat conflict" with the anti-attachment provision that protected payments to the named beneficiary "from the claims of creditors," and from "attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Id.* at 659, 70 S.Ct. at 400.

We acknowledge but distinguish *Rose v. Rose*, in which the United States Supreme Court considered a conflict between state family law and 38 U.S.C. § 5301, the same anti-attachment provision that applies to the death-gratuity benefits in our case.[1] 481 U.S. 619, 630–34, 107 S.Ct. 2029, 2036–38, 95 L.Ed.2d 599 (1987). A state court held a disabled Vietnam veteran in contempt for failing to pay child support. His only means of satisfying the child-support obligation were his military disability benefits. He argued that the state court action was preempted by section 5301 (then 3101), which provided that veterans' benefits were not "liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Id.* at 630, 107 S.Ct. at 2036. The Supreme Court disagreed. It observed that the veterans' disability benefits were intended to provide reasonable compensation for disabled veterans *and their families. Id.* at 634, 107 S.Ct. at 2038. The state contempt proceeding therefore did not frustrate the purpose of the statute because it furthered the federal objective for the benefits to support the veteran and his dependents. *Id.* The court reasoned that, unlike the application of the SGLIA anti-attachment

provision at issue in *Ridgway,* "Congress ha[d] not made [Rose] the exclusive beneficiary of the disability benefits." *Id.* Unlike *Rose,* the life-insurance and death-gratuity instruments at issue here have a single beneficiary by operation of federal law and Levi's designation.

"[A] state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." *Ridgway,* 454 U.S. at 55, 102 S.Ct. at 55. The Angells' divorce decree conflicts directly with the applicable anti-attachment provisions because it diverts funds from Levi's sole designated beneficiary. Federal law empowered Levi to freely designate the beneficiary, and "'Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.'" *Id.* (quoting *Wissner,* 338 U.S. at 658, 70 S.Ct. at 399). We hold that the $150,000 award to Gordon Angell was effectively a seizure of Loretta Angell's nonmarital property and that this seizure violates the federal anti-attachment provisions of 38 U.S.C. §§ 1970(g) and 5301(a)(1). Although the district court correctly held that the award meets the objectives of Minnesota law, under the Supremacy Clause, the federal statutes control and prohibit the division.

## DECISION

The district court properly classified the life-insurance and death-gratuity benefits as Loretta Angell's nonmarital property because they were intended as a gift to her only, and not to Gordon Angell. But the district court's awarding of a portion of her nonmarital property to Gordon Angell under state law conflicts with the authorita-

---

1. The anti-attachment provision considered in *Rose* was 38 U.S.C. § 3101. This statute was later renumbered to its current designation as 38 U.S.C. § 5301. *See* Department Of Veterans Affairs Health–Care Personnel Act Of 1991, Pub. L. No. 102–40, § 402(b)(1), 105 Stat. 187, 238–39 (1991).

tively superior federal anti-attachment provisions that protect the funds from attachment, levy, or seizure either before or after the beneficiary's receipt. We therefore reverse on that issue only and remand for the district court to make a property distribution consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**