J. A17027/20

2020 PA Super 284

| | | |
|---|---|---|
| JOHANNA L. GOODWIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SCOTT M. GOODWIN, | : | No. 2338 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered July 22, 2019,
in the Court of Common Pleas of Bucks County
Family Division at No. 2008-63956-DQRY

BEFORE:  BOWES, J., McCAFFERY, J., AND FORD ELLIOTT, P.J.E.

OPINION BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 14, 2020**

In this appeal Scott M. Goodwin ("Husband") challenges the trial court's equitable distribution of the marital estate in the divorce proceedings between him and Johanna L. Goodwin ("Wife").  After careful review, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's September 16, 2019 opinion, and our review of the certified record.  Husband, born in 1961, and Wife, born in 1966, married in 1990.  Wife's son, Nicholas Campellone, Esq. ("Son"), was three years old at the

time, and while he lived with the parties, Husband did not adopt him.[1]  The

parties were never previously married, and no children were born to the

marriage.

According to the trial court, both parties are high school graduates.[2]

(Trial court opinion, 9/16/19 at 2.)  Husband suffers from a major depressive

disorder and began collecting Social Security Disability ("SSD") in 1999; he

has not worked since 2002.  (*Id.*)  Throughout the marriage, Wife worked for

the inside sales division of Benjamin Obdyke, Inc.  (*Id.*)  On February 17,

2009, Wife filed a complaint in divorce; subsequently, the parties reconciled,

however, Wife did not withdraw the complaint.  (*Id.*)

Son died on January 1, 2017, at the age of 30 due to a pulmonary

embolism.  (Wife's brief at 5.)  He did not have any children or heirs, other

than his mother (Wife), and died intestate.  (Trial court opinion, 9/16/19 at 1.)

Son acquired, through his employment, four life insurance policies; he named

his mother, [Wife], as sole beneficiary.  (***See id.***)  Wife received all of the

---

[1] Son's biological father died before he was born.  (Husband's brief at 9.)  The parties dispute the extent of Husband's relationship with Son.  Husband refers to him as "their son" and claims he "raised and treated [him] as if he were his own son," and "[u]ntil he entered 10th grade, [Son] was known as Nicholas Goodwin."  (***Id.*** at 9, 18, 52.)  However, Wife avers Husband and Son's "relationship was turbulent [and t]owards the end of [S]on's life," Husband refused him entry into the marital residence.  (Wife's brief at 5.)

[2] Wife disputes this, claiming she did not graduate from high school.  (Wife's brief at 7.)

proceeds of these policies, $633,301.72.[3] Moreover, Wife received the funds

enumerated below from Son's estate[4]

| | |
|---|---|
| North Western Mutual IRA | $3,445.00 |
| Bank of America Money Market [] | $2,926.96 |
| Bank of America Checking [] | $306.16 |
| Bank of America Checking [] | $900.99 |
| Bank of America Savings [] | $637.40 |
| **Total** | **$8,216.51** |

*Id.* at 2. Husband and Wife agree Wife was the sole named beneficiary on

the IRA. (Husband's brief at 13-14; Wife's brief at 26.) Despite this, the trial

court did not make such a finding in its equitable distribution order or opinion.

The parties separated on March 27, 2017, approximately four months

after Son's death. The marriage lasted 27 years. Wife used a portion of the

proceeds from Son's estate to purchase a house. On April 6, 2017, Wife filed

a praecipe to reinstate her 2009 divorce complaint. Husband filed an answer

and counterclaim seeking alimony.

The trial court summarized the parties' income history as follows.

Husband's 2017 federal income tax return reflected gross income totaling

---

[3] The parties agree no portion of these polices were purchased with marital assets. Three of the insurance policies were issued by North Western Mutual Life Insurance, in the amounts of $101,077.88, $300,010.98, and $100,032.46; they also bore interest of $180.40. The fourth life insurance policy, issued by Unum Life Insurance, was in the amount of $132,000. (Trial court opinion, 9/16/19 at 2.) Son did not name Husband as successor beneficiary in any of these policies. (*Id.*)

[4] Husband claims there was never "an [e]state of Nicholas Campellone," because "[n]o one opened up an estate." (Husband's brief at 12, 20.) However, for ease of discussion we will use the word, "estate."

$17,612. (Report of master, 8/31/18 at 2.) Wife's 2017 tax return reported a gross income of $103,314. (Trial court opinion, 9/16/19 at 2.) In 2018, however, Wife lost her job; "she received a fifteen-week severance of $1,931 per week[,] from November 2018 to February 2019. Thereafter, Wife began receiving unemployment compensation in the amount of $561 per week." (*Id.*) Meanwhile, as of January 1, 2019, Husband received SSD in the amount of $1,759.50 per month. (*Id.*) Starting on August 30, 2017, Wife paid Husband $1,600 per month in spousal support. (Report of master at 2.) "On April 1, 2019, Wife was diagnosed with anxiety and depression for which she takes medication. . . . Wife was also diagnosed with Heterozygote[;] however the condition has not impaired her ability to work." (Trial court opinion, 9/16/19 at 2-3.)

The trial court also discussed the parties' assets as follows:

> The marital residence is located at 169 Indian Creek Drive, Levittown, Pennsylvania. In 2017, Wife purchased a heater at a cost of $3,628.05 for the marital home, as well as a new air conditioning unit in the amount of $784.94. The residence has since been transferred into Husband's name only and Wife's name has been removed from all corresponding liens and mortgages. The value of the home was assessed at $145,000.
>
> At the time of separation, Wife and Husband kept separate bank accounts. Wife had two accounts [with balances of $4,873 and] $1,205. Husband's . . . checking account . . . had a balance of $10,318. In 2014, Wife received a loan from Lending Club in the amount of $10,000 and another in 2015 for $25,000. On April 1, 2017, Wife paid the balance on the 2014 loan[,] $1,947. On February 8, 2017, she paid the

balance of the 2015 loan[,] $20,024. Wife also paid off total marital credit card debt in the amount of $45,985.48 as well as their 2016 joint tax in the amount of $4,400. Wife's Benjamin Obdyke 401(k) plan has a marital value of $239,862.

At the time of separation, Wife leased a 2016 Chevrolet Equinox and Husband owned a 2002 Chrysler PT Cruiser valued at $711 and free from any encumbrances.

Trial court opinion, 9/16/19 at 3.

The parties attended a master's hearing on August 20, 2018. The master issued a report on August 31, 2018, recommending Husband receive 66% of the marital estate, Wife 34%, and Wife pay "alimony at the current spousal support rate of $1,600 through August [of] 2026." (Report of master at 9.)

On September 11, 2018, Husband filed a motion for a hearing *de novo*. The court granted the motion and conducted evidentiary hearings on February 2, March 29, and May 13, 2019.

On July 22, 2019, the trial court issued the underlying order, directing the parties to be divorced and distributing the marital estate as follows:

[The trial c]ourt first made a determination that the life insurance proceeds and additional funds of the [e]state of [Son] received by Wife were not marital assets nor marital property. All investments, real estate or any other assets purchased or acquired by Wife from her [S]on's [e]state were likewise not marital property or assets.

The [trial c]ourt allocated the marital property in an equitable manner consistent with 23 Pa.C.S.[A.] § 3502. Specifically, [the trial c]ourt equitably

distributed the marital assets as follows: (a) Wife received all right, title and interest of the remaining and separate portions of her Benjamin Obdyke 401(k) plan, her [two bank accounts], and her leased 2016 Chevrolet Equinox; (b) Husband received all right, title and interest in his [checking account], his PT Cruiser, and an additional $50,000 via a rollover from Wife's Benjamin Obdyke 401(k) plan. Wife assumed responsibility for repayment of all marital liabilities and held Husband harmless regarding the same of the 2016 taxes, heater bill, air conditioning bill, total marital credit card debt and the Lending Club loans. Upon distribution, Wife would receive a total of $119,170.53 and Husband would receive a total of $206,029, effectuating a 37% award to Wife and a 63% award to Husband. Importantly, Wife was also obligated to pay alimony at the current spousal rate for an additional seven and one-half years through January 1, 2027.

Trial court opinion, 9/16/19 at 4.

Husband filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors to be raised on appeal. Subsequently, the trial court issued an opinion.

On appeal, Husband raises the following issues for our review:

1.  Did the trial court abuse its discretion, commit an error of law and reversible error when it failed to find that the life insurance proceeds and IRA money that Wife received as a named beneficiary, and the investments made and assets purchased with the proceeds, were marital property subject to equitable distribution?

2.  Did the trial court commit reversible error when it failed to designate and apply a percentage to the equitable distribution scheme in its [o]rder, and then failed to make a clear distribution scheme in its [o]pinion?

3.  Did the trial court commit reversible error, abuse its discretion, and fashion an equitable distribution award that was manifestly unreasonable by failing to consider all of the relevant factors in 23 Pa.C.S.[A.] §3502, by adding words to factors to change their meaning, and by not properly applying the factors?

Husband's brief at 6.

All of Husband's issues challenge equitable distribution. A trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v. Kilishek***, 920 A.2d 1275, 1280 (Pa.Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa.Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. ***Id.*** This court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Wang v. Feng***, 888 A.2d 882, 887 (Pa.Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. ***Id.*** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties

and achieving a just determination of their property rights." **Schenk v. Schenk**, 880 A.2d 633, 639 (Pa.Super. 2005) (citation omitted).

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this [c]ourt will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

**Childress v. Bogosian**, 12 A.3d 448, 445-446 (Pa.Super. 2011) (quotation marks and internal citations omitted).

In his first issue, Husband contends the trial court erred in finding Son's life insurance proceeds and IRA benefits were not marital property. (Husband's brief at 18-55.) We disagree, albeit for different reasons than those expressed by the trial court.[5]

Section 3501(a)(3) of the Pennsylvania Consolidated Statutes Annotated states marital property does not include, "[p]roperty acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property." For the reasons discussed below, we find the life insurance and IRA proceeds were a gift within the meaning of the statute.

---

[5] "[W]e are not limited by the trial court's rationale and that we may affirm on any basis." **Blumenstock v. Gibson**, 811 A.2d 1029, 1033 (Pa.Super. 2002) (citations omitted), **appeal denied**, 828 A.2d 349 (Pa. 2003).

Here, the life insurance and IRA proceeds vested in Wife at the death of Son, which was prior to the date of separation; Wife's receipt of the proceeds, both before and after the date of separation perfected the gift. Both parties agree the life insurance and IRA benefits were not commingled into a joint account. (Husband's brief at 27-28; Wife's brief at 23-25.) Both agree Wife used part of the proceeds to purchase a home solely in her name and put the remainder into accounts which were solely in her name. (*See id.*) Lastly, the parties do not dispute Son used his own funds to pay for the life insurance policies and deposits to the IRA account. (*Id.*)

The list of exceptions contained in Section 3501(a)(3) have a common element: the intent of the donor to transfer the property in question to only one of the spouses. The Divorce Code honors this intent, giving it priority over the general rules concerning the nature of property acquired during marriage. By listing someone as the sole beneficiary on an insurance policy or IRA, the giver makes the proceeds into a gift which vests at the time of death. Moreover, because such policies allow for the designation of co-beneficiaries and contingent beneficiaries, the failure to list any makes the intent of the giver clear. To find otherwise would make for a chaotic situation where certain forms of gifts would be considered marital property while other forms were not and the intent of the giver would be completely disregarded.

There is little law in Pennsylvania discussing the situation at bar, where one spouse is the designated beneficiary of a life insurance policy which is

vested prior to the dissolution of the marriage. However, the two cases which do discuss the matter did not find life insurance did not fall within the meaning of Section 3501(a)(3). In fact, they did not even discuss the issue, but found it to be marital property based upon circumstances not present in the instant matter.

In *Sutliff v. Sutliff*, 522 A.2d 1144 (Pa.Super. 1987), *affirmed in part, reversed in part on other grounds, and remanded by*, 543 A.2d 534 (Pa. 1988), a panel of this court affirmed a master's finding the evidence was insufficient to show husband used the proceeds of his father's life insurance policy and pension benefits to purchase stocks, and therefore, the stocks were marital property. *Sutliff*, 522 A.2d at 1150. In a brief, one-paragraph discussion, we agreed with the master's finding the funds had been "commingled in a joint checking account used for various expenditures of the family and sufficient evidence was not produced that the stock was purchased with the insurance and pension benefits." *Id.* What is of greater interest is what is implied by this decision: had the proceeds of the life insurance policy and pension benefits not been commingled into the joint checking account, they would not have been considered marital property. *See Sutliffe*, 522 A.2d at 1150.

In *Rohrer v. Rohrer*, 715 A.2d 463 (Pa.Super. 1998), after another brief discussion, a panel of this court again found the proceeds of the husband's father's life insurance policy to be marital property. *Rohrer*, 715

A.2d at 467-468. However, as in *Sutliff*, there was no discussion of whether life insurance proceeds, in general, were marital property; rather, the holding rested on the fact husband had used marital funds to purchase and maintain the policy on behalf of his father. *Id.*

While Pennsylvania courts have not spoken to the relevant issue, our sister states have.[6] In *Amato v. Amato*, 596 So.2d 1243 (Fla.Ct.App. 1992), a child of the marriage named his mother as the sole beneficiary of a life insurance policy. *Amato*, 592 So.2d at 1244. After the insurance company distributed the proceeds, the wife placed the funds in a joint checking account and each party drew upon them. *Id.* In the decision, the court noted it wrote specifically to clarify the only reason it was treating the proceeds as marital property was because, by placing the funds in a joint account, the wife gifted husband a half share of the proceeds. *Id.* at 1244-1245. In *Weekes v. Weekes*, 611 P.2d 133 (Idaho 1980), the Idaho Supreme Court found life insurance proceeds from a policy purchased by a child of the marriage in which mother was named as the primary beneficiary and father as the second beneficiary were not marital property. *Weekes*, 611 P.2d at 133-134. The court gave no explanation for its finding, simply stating the trial court's finding it was "separate" property was "supported by the record." *Id.* at 134. If anything, the instant matter, where the son was not a child of the marriage,

---

[6] "The decisions of courts of other states are persuasive, but not binding, authority." *Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa.Super. 2012) (citation omitted), *appeal denied*, 68 A.3d 909 (Pa. 2013).

- 11 -

husband was not named as a secondary beneficiary, and the funds were never commingled, presents an even stronger case for finding the proceeds were not marital property.

In reaching this conclusion, we looked particularly to these five cases decided between 1978-2009 in appellate courts in Kentucky, Missouri, Colorado, Iowa, and Minnesota. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 318-19 (Iowa 2000) (holding son of marriage's life insurance benefits designated solely to mother constituted gift and, therefore, were not marital property); *Angeli v. Angeli*, 777 N.W.2d 32, 34-37 (Minn.Ct.App. 2009) (holding son of marriage's life insurance and military death benefits naming mother as sole beneficiary were gift; recognizing, "the benefits conveyed by the instruments at issue do not resemble the usual 'gift' as the term is commonly used. But they have the essential characteristic of a gift, which is a transfer without consideration." (citations omitted)), *affirmed*, 791 N.W.2d 530 (Minn. 2010); *Sharp v. Sharp*, 823 P.2d 1387, 1388 (Colo.Ct.App. 1991) (holding mother's life insurance benefits were gift to son and not marital property; stating, "a gift is perfected when the donee receives it; a gift does not fail only because the donor retains some control over it until that time." (citation omitted)); *Fields v. Fields*, 643 S.W.2d 611, 613-615 (Mo.Ct.App. 1982) (holding life insurance benefits and other funds inherited by father from son from former relationship, where it was unclear if funds were testamentary, were gifts and not marital property); and *Brunson v.*

***Brunson***, 569 S.W.2d 173, 176-177 (Ky.Ct.App. 1978) (holding two of father's life insurance policies naming husband as sole beneficiary were not marital property but the third, funds from which had been commingled into family business, was marital property).

In each of these cases, the courts interpreted statutes either identical in language or closely tracking the language of Section 3501(a)(3), each concerned life insurance either by itself or in combination with other inherited property, some of which was testamentary, some of which was not, in some cases, the court could not determine the nature of the inheritance, and in all cases, the courts found the non-commingled property in question not to be marital property. ***See Goodwin***, 606 at 317, 319; ***Angeli***, 777 N.W.2d at 34-37; ***Sharp***, 823 P.2d at 1388-1389; ***Fields***, 643 S.W.2d at 613-615; and ***Brunson***, 569 S.W.2d at 176-177. We find these decisions and the reasoning underlying them to be extremely persuasive. Accordingly, we hold the life insurance and IRA proceeds are gifts within the meaning of Section 3501(a)(3) and, therefore, not marital property.

This case highlights the difficulties which occur when the Probates, Estates and Fiduciaries ("PEF") Code and the Divorce Code collide. We are aware both the PEF Code and our supreme court have held life insurance is not testamentary in nature. While there is minimal case law in the individual states regarding the treatment of non-testamentary inheritances in divorce, those courts which have faced the issue have honored the intent of the giver

and treated the property as non-marital. They all found it to fall within the language of their relevant divorce codes; the language of all of these codes being either identical to or exceedingly close to the language of Section 3501(a)(3). Thus, our finding the life insurance and IRA funds at issue in the instant matter constitute a gift and thus fall within the exceptions delineated in Section 3501(a)(3) is consistent and in alignment with the holdings of courts in our sister states. For these reasons, Husband's first issue does not merit relief.

In his second issue, Husband argues the trial court committed reversible error by failing to "designate and apply a percentage to the equitable distribution scheme in its order[.]" Husband also maintains the equitable distribution scheme was not "clear." (Husband's brief at 55 (emphasis omitted); *see also id.* at 55-60.) We disagree.

Initially, Husband admits, while the decree and order did not list the percentages of the equitable distribution scheme, the trial court rectified this in its Rule 1925(a) opinion. (Husband's brief at 56.) While Husband claims this figure is incorrect (*see id.*), Husband arrives at this conclusion by omitting portions of the decree and order, and the opinion from his discussion, in particular the trial court's handling of the issue of marital debt. (Husband's brief at 56-58; trial court decree and order, 7/22/19 at 1-4; trial court opinion, 9/16/19 at 6-9.)

Here, the trial court specifically stated in the July 2019 decree and order, it was not intended to be a "formal [o]pinion" and if either party appealed, it would draft a more expansive decision. (Trial court decree and order, 7/22/19 at 1.) While it would have been better practice for the trial court to have included the percentage amount in its initial decree and order, we see nothing in either the decree and order or the Rule 1925(a) opinion which is unclear. Further, this is less a claim the distribution scheme was unclear and more a claim Husband disagrees with the treatment of the marital debt. (Husband's brief at 58-59.)

The trial court addressed this issue as follows:

> In apportioning the marital assets, [the trial c]ourt also apportioned the marital debts to effectuate that distribution. Husband asserts Wife's decision to pay the marital debts were a gift and should not be factored into distribution. However, "[b]etween divorcing parties, debts which accrue to them jointly prior to separation are marital debts." ***Biese v. Biese***, 979 A.2d 892, 896 (Pa.Super. 2009). There is no dispute the $45,985.48 of credit card debt is a marital debt and Wife paid that debt. Wife's decision to pay off the marital debt after separation with her separate money is of no moment. The marital credit card and loan debt, marital home expenses, and joint taxes were apportioned to Wife to offset her total received. Finally, the [trial c]ourt also [o]rdered Wife to support Husband with monthly alimony payments through January 1, 2027.

Trial court opinion, 9/16/19 at 9.

From the trial court's statement, "Wife's decision to pay off the marital debt after separation with her separate money is of no moment," Husband

extrapolates the court found "all of these marital debts were Wife's sole responsibility." (Husband's brief at 58-59, quoting trial court opinion, 9/16/19 at 9.) We disagree. The trial court clearly concluded the debts were marital in nature, notwithstanding Wife's decision to pay them "with her separate money." (Trial court opinion, 9/16/19 at 9.) Moreover, Husband's contention the debts were not marital debts because, "Wife ran up these debts on her own" (Husband's brief at 59-60), is contrary to settled law.

We have long held debts incurred during marriage are marital debt, regardless of which party incurred them. *See Biese*, 979 A.2d at 896; *see also Duff v. Duff*, 507 A.2d 371 (Pa. 1986) (tax assessment liability accruing to parties from sale of stock prior to separation was joint liability to be included in computation of marital estate); *Litmans v. Litmans*, 673 A.2d 382, 391 (Pa.Super. 1996) ("Between divorcing parties, debts which accrue to them jointly prior to separation are marital debts." (citation omitted)).

Here the trial court stated it looked at the Section 3502 factors, described the ones which were relevant to the instant matter, and properly found the debt to be marital. This is all the law requires. *Schultz v. Schultz*, 184 A.3d 168, 175 (Pa.Super. 2018) (holding wife not entitled to relief where trial court specifically stated it reviewed all factors set forth in Section 3502(a), and set forth reasons for distribution scheme). Moreover, we see nothing in the decree and order which overrode or misapplied the law or was manifestly

unreasonable. ***Wang***, 888 A.2d at 887. Husband's second issue does not merit relief.

In his third and final issue, Husband avers the trial court erred because its distribution scheme did not effectuate economic justice; moreover, he believes the court did not consider all the factors enumerated at 23 Pa.C.S.A. § 3502. (Husband's brief at 61-74.) Generally, Husband maintains he is 58 years old and has received SSD for 20 years, and predicts he "will always be unemployed" and "[w]hatever he receives in equitable distribution will be his estate." (***Id.*** at 68, 70.) On the other hand, Husband contends, Wife is five years younger, has "testified that her alleged health issues never prevented her from working . . . has better prospects for employment . . . is already economically stable . . . [and] is intentionally failing to seek appropriate employment." (***Id.*** at 68, 70.) Husband concludes the court's distribution award was manifestly unreasonable. We disagree.

Section 3502 of the Divorce Code provides:

> **(a)** **General rule.--**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1)     The length of the marriage.

(2)     Any prior marriage of either party.

(3)     The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4)     The contribution by one party to the education, training or increased earning power of the other party.

(5)     The opportunity of each party for future acquisitions of capital assets and income.

(6)     The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7)     The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8)     The value of the property set apart to each party.

(9)     The standard of living of the parties established during the marriage.

(10)    The economic circumstances of each party at the time the division of property is to become effective.

> (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
>
> (11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a)(1)-(11).

This court has stated,

> A trial court has broad discretion when fashioning an award of equitable distribution. In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S.A. § 3502(a). However, there is no standard formula guiding the division of marital property and the method of distribution derives from the facts of the individual case. While the list of factors in Section 3502 serves as a guideline for consideration, the list is neither exhaustive nor specific as to the weight to be given the various factors. Accordingly, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Hess v. Hess*, 212 A.3d 520, 524 (Pa.Super. 2019) (citations and quotation marks omitted).

Here, the trial court reasoned as follows:

> **Based upon the factors enumerated in 23 Pa.C.S.[A.] § 3502**, [the trial c]ourt found the following general factors relevant: (1) the length of the marriage; (2) the age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities, payment of prior marital expense and needs of each of the parties; (3) the opportunity of each party for future acquisitions of capital assets and income by working; (4) the value of the property set apart to each party; and (5) the standard of living the parties established during the marriage.
>
> The record shows that Wife, age 53, and Husband, age 58, were married for twenty-seven years at the time of their separation. Husband and Wife are both high school graduates. Husband has been battling a major depressive disorder and has not worked since 2002 as a result. Since that time, Husband's earning capacity has undoubtedly plateaued, however, he receives SSD resulting from his depression. Wife was the superior income earner throughout the marriage and was gainfully employed for the last fifteen and a half years of their marriage in a well-paying position. Upon the death of her son, Wife received $641,518.23 from her son's life insurance policies and estate, leaving Wife in a superior future financial position than Husband. Most recently, Wife has been diagnosed with depression and additional medical concerns.
>
> Husband's assertion that the [trial c]ourt erred in not considering Wife's willful failure to seek employment is without merit. Wife's job was terminated upon reorganization of her employer Benjamin Obdyke and she was not retained. As she is entitled to do, Wife applied for unemployment compensation. The Department of Labor and Industry ("Department") determined and decided she was eligible for such unemployment compensation benefits and she began receiving $561 weekly. *See* 43 Pa.C.S.[A.] § 801. It is not [the trial c]ourt's function to determine whether Wife is or is not eligible for benefits under

unemployment compensation law while undertaking an equitable distribution matter. Such matters are the responsibility of the Department and the Unemployment Compensation Board of Review. ***See*** 43 Pa.C.S.[A.] §§ 761, 763. For equitable distribution concerns, the $561 in unemployment compensation is considered part of her newly established income which the Department has deemed her entitled to receive under Pennsylvania law. Although Wife is not presently employed, the [trial c]ourt does find her age and work experience leave her in a better position to obtain another job than Husband in the future.

The [trial c]ourt did not find Husband's removal cost of liens and mortgages on the marital home a relevant factor to be given weight in considering the equitable distribution of marital property. After an [e]mergency [p]etition for [p]artial [d]istribution of the marital residence was filed by Husband, he was awarded the marital residence and its equity after refinancing and removing Wife's name from all corresponding liens and mortgages. Husband has successfully removed those encumbrances of $12,209 at a cost to him of $750 as it was in the best interest of Husband to negotiate settlement of the liens on the marital home. Since Wife contributed to pay for a new heater and air conditioning installation in the [marital] residence, totaling over $4,000, the [trial c]ourt decided to not assign a greater significance to Husband's negotiated contribution to the equity in this marital asset.

Trial court opinion, 9/16/19 at 7-8 (emphasis added).

We are not persuaded by Husband's claim that the trial court erred in "only" considering the factors at Subsections 3502(a)(1), (3), (5), (8), and (9). (***See*** Husband's brief at 64 ("This is contrary to the requirement of § 3502 to consider 'all' relevant factors.").) For example, although the trial court did not address the weight of "[a]ny prior marriage of either party" (Subsection (a)(2)) or any contribution "to the education, training or increased

earning power of the other party" (Subsection (a)(4)), the court plainly stated both parties were high school graduates, and Husband himself points out that neither party was previously married. *See* 23 Pa.C.S.A. § 3502(a)(2), (4); trial court opinion, 9/16/19 at 2; Husband's brief at 68. Significantly, Husband does not present any argument how consideration of the unmentioned factors would affect the equitable distribution in this matter. Furthermore, we deny relief on Husband's claims the court improperly "added the words 'payment of marital expense' to factor number 3[ and] added the words 'by working' to factor number 5." (Husband's brief at 64.) Instead, our review of "the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors" reveals no abuse of discretion under Section 3502. *See Hess*, 212 A.3d at 523 (citation omitted).

Moreover, as in his second issue, Husband's claim is based on a misreading of the trial court's decree and order, and opinion, and the omission, deliberate or otherwise, of facts which weaken his position. Lastly, Husband's final claim is not a really a claim of errors by the trial court but a request we reweigh the Section 3502(a) factors in his favor. (Husband's brief at 61-74.) However, we have long held we will not reweigh the relevant statutory factors on appeal, as that is not our role as an appellate court. *See Busse v. Busse*, 921 A.2d 1248, 1259-1260 (Pa.Super. 2007) ("The weight to be given to [] statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them." (internal quotations

marks and citations omitted)), ***appeal denied***, 934 A.2d 1275 (Pa. 2007). Husband's final issue does not merit relief.

Accordingly, for the reasons discussed above, we find Husband's issues do not merit relief. Therefore, we affirm the order of July 22, 2019.

Order affirmed.


Bowes, J. joins this Opinion.

McCaffery, J. files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/14/20</u>